84  737
86  222

BARATARIA CANNING COMPANY *v.* JOSEPH OTT ET AL.

1. WATERS. *Lands bounded by sea. Owner's rights. Fishing. Oyster taking.*

In the absence of an express statute the owners of land bounded by the sea possess no exclusive right to the soil under the water beyond high water mark, and they have no greater right than others of fishing and gathering oysters from natural beds in front of their property.

2. SAME. *Code* 1880, § 956. *Code* 1892, § 3080, *et seq.*

Code 1880, § 956, granting the board of supervisors of the counties bordering on the Gulf of Mexico jurisdiction in the matter of the protection and preservation of oysters growing and being grown within the limits of their respective counties and with power to grant private rights of property in oysters banked, planted, or cultivated in the waters of the county, is constitutional, and a private right to bank, plant, and cultivate oysters in the waters of the sea, within the limits of the county, acquired from the board of supervisors under said statute, is valid.

3. DEEDS. *Reservations.*

In order for a reservation in a deed to be operative it must withhold from the grant something which would have passed by the deed but for the reservation.

4. SAME. *Construction.*

In construing a reservation in a deed it is not competent to show by evidence *aliunde* the intention of the parties, as the deed speaks for itself ; and if the reservation be so indefinite as not to convey any certain meaning, it will be ineffectual.

FROM the chancery court of Harrison county.

HON. STONE DEAVOURS, Chancellor.

Ott and others, appellees, were complainants in the court below; the Barataria Canning Company, appellant, was defendant there. From a decree favorable to complainants the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

84 Miss.—47

*Harper & Harper,* for appellants.

It is as elementary that the state of Mississippi owns all the land under the tide waters within her borders, except where she has parted with the title by grant, as it is that the United States owns all the land within this state, except where it has parted with the title by grant or otherwise. See *Smith* v. *Maryland,* 18 How. (U. S.), 74. It is equally as elementary that the state of Mississippi has complete dominion over the waters covering these lands, subject only to the paramount right of navigation, and such dominion includes the right to grant to a resident individual, a nonresident individual, a corporation, a partnership, or whomsoever it may choose, the right to a several fishery over any designated space of land covered by tide water, either for a term of years or forever, and which right of several or exclusive fishery may apply either to the floating fish, shell fish, or both. *McCready* v. *Virginia,* 94 U. S., 394; *State* v. *Harrub,* 95 Ala., 176.

It follows that an exclusive fishery in tide waters can be acquired in but two ways—by grant from the state, or by prescription which presupposes a grant from or through the sovereign; a claim to a several fishery through any other source is nugatory and void.

The legislature of the state of Mississippi has delegated its exclusive power over its fisheries to quasi-corporations—namely, the board of supervisors of the several counties of the state—from time to time, as have a majority of the other states of the union, which right to delegate this power has never been questioned by any reputable authority.

Appellant claims title under the board of supervisors of the county.

It is not possible for the writer to understand, from the pleadings, from the evidence, or from argument of opposing counsel in the court below, how the appellees claim title, but the following are the only ways in which they might have acquired it: First—By grant from the state of Mississippi. No such grant

was offered in evidence. Second—By prescription. No effort was made by them to show anything that would presuppose a grant. Third—By a transfer to them by this appellant.

Did these appellees acquire title to any part of this bedding ground by the deed of October 1st, 1903? Oral testimony was introduced by these appellees to explain this deed, which was written by their own counsel, the leading counsel of this court for the opposition; and the defendants in the court below and the chancellor, by reason of this incompetent evidence, then and there entered into a new contract and reformed the deed, so to speak, on behalf of the Barataria Canning Company, without its consent.

It is shown by this evidence, which the court will not consider, that the Barataria Canning Company had leased from Peter and Mary Ott, the then owners, a small property, for a period of twenty-five years, at a rental of one hundred and fifty dollars per annum, upon which the appellant erected a canning and packing plant, valued at seventy-five thousand dollars; that in 1902, this appellant, knowing that the lease to the land would expire at no distant day, and being desirous of continuing its business, sought these appellees and endeavored to obtain another lease for a like period. After almost a year's effort in this direction, it was found that no lease could be had. As a last resort it was suggested that the Otts, the appellees, would name some price for which they would sell the property, that the officers of the Barataria Canning Company would have no further conversation with them whatever, in and about the territory that they would sell to them. The appellees were to name the price in a deed. They were to make this appellant a proposition of sale by having this deed prepared by their own counsel, to be placed in escrow, after which placing, the officers of the appellant company were to take the matter up and consider the deed, and if the terms and conditions of the deed were satisfactory, the appellant company was to pay the price named in the deed, and the same was to be delivered. This oral evi-

dence shows that this appellant corporation knew absolutely
nothing of the contents of this deed until it was placed in
escrow, having never seen it.  All these things were done,
the deed was placed in the hands of A. B. Austin in escrow, a
copy of the same was furnished this appellant company, the
terms and conditions were considered, the price was paid, the
instrument was legally acknowledged, signed, sealed, and ac-
cepted by the corporation without any officers of the company
having ever seen or conversed with these appellees from the be-
ginning of the negotiation of sale until it was completed.

By every rule of construction the deed of October 1st, 1903,
must be considered alone, without the aid of oral testimony, and
most strongly against the grantors.

The first reservation says, "Any and all littoral and aquatic
rights and privileges appurtenant and attached to said land or
vested in the grantors as the owners of said land are hereby ex-
pressly reserved so far as said privileges lie to the eastward and
northward of that certain line which had its beginning point on
the Bay of Biloxi," etc.

It is of no concern in this litigation to this court what the
term "littoral and aquatic rights" embraces; further than to de-
termine whether the term embraces the right to bank, plant,
and cultivate oysters, such a term could not have been so con-
strued, but certain it is when qualified by "appurtenant to the
land conveyed and retained or vested by law in the owners of
said land," the oyster bedding ground, which is not appurtenant
to the land conveyed and retained or vested by law in the owners
of said land, the term cannot have the force and effect to divest
such a bedding ground out of the grantee and invest the grant-
ors with it.  The title to this bedding ground has never been ap-
purtenant to the land involved; it has never been attached to it;
it has never been vested in these appellees; it was never vested in
their ancestors.  The state is the owner in fee to this property,
it always has been, and, until it is granted by the legislature,
will remain in the state subject to the lease made through the

legislature to the appellant company, which lease expires by limitation in a few years.

The third and only other clause which the writer wishes to call the attention of the court to the deed of October 1st, 1903, reads as follows: "It being the purpose of this instrument to grant to the Barataria Canning Company all such littoral and aquatic rights and privileges appurtenant and attached to said land or vested in the said grantors as owners of said land as may be exercised wholly to the westward and southward of said line so established."

If the contention of the appellees should be right, they attempted to sell to this appellant that which it already owned. Can counsel seriously contend that the appellant acquired title to that part of the bedding ground which lies north and west of the conventional line aforesaid and east of the Lugenbuhl property and north of the channel, by deed of October 1st, 1903? Such an idea is absurd.

*Miller & Doty,* on the same side.

Neither the motives nor the understanding of the defendants, not provided for in their deed, can be regarded any more than the understanding of the complainant when it made the purchase. Nor can the alleged representations made to the board of supervisors to obtain the concession, under which the complainant acquired the oysters, be considered.

It is enough that under the law as it stood the complainant secured the right to plant and cultivate oysters for a period which has not expired. It is not denied that it did own the oysters so planted and had the right to take them, or that it was in the full exercise of that right up to the 1st day of October, 1903, when it purchased a piece of the shore embracing its factory, plant, and building ground, and cancelled its previous lease.

The claim of the defendants springs entirely from their own conveyance of the southern portion of their front land, the can-

cellation of a pre-existing lease of a portion, and the language employed in their reservation. If the complainant has surrendered its property and rights to the defendants, it certainly has not done so by any express terms, and, as we submit, not by any fair implication.

We have as much right to say the complainant would never have paid six thousand dollars for the little piece of front land, if by conceding aquatic and littoral rights, east and north of their most eastern or northern boundary line, it was expected to make over to defendants its costly property beneath the waters on ground subject alone to the state's dominion and exercised through a local authority; as the defendants have to say, they never would have sold for six thousand dollars if they had not expected to get this property of complainant.

If they had that purpose in view and expected the complainant so to understand it, it is rather odd that instead of essaying to reserve such littoral and aquatic rights as might pertain to the owner of the shore conveyed, they did not provide expressly in the deed they put in escrow, as part of the consideration, that the complainant made over to them its oysters beyond their shore line with the exclusive right to take the same.

There are two fallacies in the defendants' case, either one of which, being shown, is sufficient to defeat them. The first is in supposing that complainant's right, acquired from the board of supervisors, was "littoral and aquatic" in the enlarged sense of their understanding and depended entirely on the circumstance that its assignors had acquired a lease from defendants' ancestor and must cease with the termination of that lease. This supposition of theirs grows out of the notion that according to the laws in force in 1885, the riparian owner alone was entitled to a concession of oyster privileges, whereas there was no such restriction upon the powers of the board, the only advantage the riparian owner had in his "littoral" rights over others was when he should be ready to land his catch.

The second fallacy of defendants is in supposing that a trans-

fer of property in the oysters arose, by implication, from the reservation by defendants of all such "littoral and aquatic" rights and privileges as belonged to the owner of the front land and the agreed disclaimer on the grantee's part of any right to exercise "littoral and aquatic" rights to the east and north of the line referred to.

Title to property, not even mentioned, does not pass from the grantee in a deed to the vendor by a reservation in favor of the latter of some portion or appurtenance of or to the property conveyed which the parties think might, without the reservation, be embraced. The reservation presupposes, of necessity, that the thing reserved belongs to the vendor, and the object of its insertion is to assure its retention and to prevent dispute regarding the limit or effect of the grant.

*Ford & White*, for appellees.

This is a controversy as to the exclusive right (which is claimed by both appellant and appellees) of fishing and planting oysters in the water front appurtenant to that certain lot of land extending from Little Cove, on the Bay of Biloxi, to a point three hundred and sixty-five feet east of the eastern line of the lot known as the Lugenbuhl property.

The chancery court, having taken jurisdiction, has jurisdiction for all purposes, and hence we contend: First—If appellees' right to plant, cultivate, and catch oysters in the waters in question, or any part thereof, is superior to that of appellant, then the demurrer to the cross-bill was properly overruled. Second—Unless appellant had exclusive right as against appellees to plant, cultivate, and catch oysters on said premises, and every part thereof, then the motion to dissolve the injunction was properly sustained.

Under the common law a right of property in fish attaches to those reduced to actual possession and manucaption, but when they are returned to their native element they become a part of the common stock belonging to the public generally, and

the same rule applies to oysters and shell fish so far as it relates to the manner of acquiring a right of property in those caught. But oysters, having no power of locomotion, may be returned to the water without losing the right of property in them, provided they are not abandoned or mingled with other oysters growing either on a natural oyster reef or private bedding grounds; hence the rule is well settled that a citizen may acquire an exclusive property in oysters by planting them in beds where no oysters are growing, and the right of ownership is not restricted to the oysters planted, but extends to and embraces the offspring of the parent oysters which remain on the beds; and when he has thus acquired title in oysters, other persons cannot impair his title by planting other oysters in the same place.   12 Am. & Eng. Ency. Law (2d ed.), 566.

The cross-bill alleges, and the proof taken on the motion to dissolve the injunction shows, that prior to 1885 the Otts had planted large quantities of oysters in the waters in dispute, which oysters were scattered "from high water mark all the way out," as testified to by witness McCaleb; so that at the time of the lease of the premises in dispute, "with all its privileges and appurtenances of fishing and bedding oysters," the Otts had a property right in the oysters in said waters, together with their increase, which amounted to an exclusive right of fishing and planting oysters therein, which right, by said lease, was transferred to the grantors of appellant for twenty-five years; and the board of supervisors, recognizing this lease and making special reference to it, attempted to secure to them that property right in the oysters so planted, which they already had.

Up to 1886 the riparian owner, like any other person, could only acquire an exclusive right in navigable waters by planting first where there were no oysters growing, as was done by the Otts, but by the acts of 1886 (page 180) the exclusive right to plant oysters in front of their property was conferred upon the riparian owners up to, but not across, the channel.   The code of 1892 is a repetition of the acts of 1886.   The acts of 1896 give

the exclusive right to plant oysters in front of their property to
the riparian owners, but limit this right to waters within one
thousand yards of the shore.   The act of 1902 is a repetition of
the act of 1896, except that the limit is fixed at five hundred
yards.

These several acts served to give the exclusive right to ripa-
rian owners who had not acquired it under the common law by
taking possession; but they did not operate to deprive any
riparian owner of any right already acquired.

The Otts, having first acquired the exclusive right by virtue
of their having planted the shoal waters in front of their prop-
erty in oysters, leased this right to appellant's grantors.   The
next year the legislature, by act above mentioned, gave to the
riparian owner the exclusive right to plant oysters in front of
his property.   The right of the Otts under this statute inured
to the benefit of their lessees, so that appellant's grantors ac-
quired the exclusive right to plant and catch oysters on the
premises in controversy during the term of said lease; and ap-
pellant, under these conditions, cannot be heard to set up a title
adverse to that of its lessors under whom it went into pos-
session.

The license, or permit, granted to appellant's grantors in
1895 by the board of supervisors, was made under § 956,
Code 1880, which gave to the board of supervisors the power
to "protect and preserve" oysters growing in a "state of nature
within the territorial limits of each county respectively," to
regulate times and places for taking same, and "to secure a pri-
vate right of property in oysters banked, planted, or cultivated
in the waters of the county," and this was the limit of the power
given to boards of supervisors by that section; and any attempt
by the board to grant a lease for a term of years, or to do more
than to grant a right of property in oysters planted, which right
of property existed at common law, provided the oysters were
not mingled with others, was *ultra vires* the power delegated to
the board, and was void under the rule of construction of powers

granted to boards of supervisors adopted in *Jefferson County* v. *Grafton,* 74 Miss., 435. The title to the land covered by tide waters is in the state in trust for all the people of the state, and the order of the board of supervisors, under which appellant asserts title, was a mere license at most, and was repealable at will by either the board of supervisors or legislature. *I. C. R. R. Co.* v. *Illinois* (Lake Front case), 146 U. S., 387.

We submit that the only claim appellant ever had to the premises in controversy was that acquired from the ancestors of appellees, under the lease from Mary and Peter Ott, and that their rights in said premises were recognized by appellant in its contract of October 14th, 1903, in which it relinquished to appellees all its rights in the waters in dispute, and which effectually estops it to assert title thereto against appellees.

The only claim asserted by appellant in the court below seemed to rest upon an imaginary, finely drawn distinction between "aquatic rights," "riparian rights," and the right to plant, cultivate, and catch oysters, whereby appellant sought by a play upon terms to escape the effect of its contract, after having received the consideration.

With the factory of appellant situated as it was on this land and the lease about to expire, appellees could have named their price for this lot, and they testified that they never would have sold it for six thousand dollars or any other sum without the retransfer to them of the unexpired lease of, and without retaining the title to, the bedding ground, and that this was a part of the consideration for the sale to the Barataria Canning Company of the lot upon which its factory is situated.

We submit that the action of the chancery court was correct in refusing its sanction to this effort of appellant to avoid the real intent and purpose of its contract by a restricted and narrow construction of its language, and that the decree dissolving the injunction and overruling the demurrer to the cross-bill should be affirmed.

TRULY, J., delivered the opinion of the court.

On the 12th day of February, 1885, Peter W. Ott and wife, ancestors of appellees, leased to Simon Gumbel and others, assignors of appellant, certain property, being a lot at Point Cadet, in the town of Biloxi, fronting on Mississippi Sound or Gulf of Mexico, therein described. Said lease contains the following cause: "Said lessors also demise, lease, and to farm let unto said lessees, but also without power to sublet unless by consent of lessors first had, all the exclusive right of the said lessors to the water front on said sound or gulf of all lands owned by said lessors, extending from eastern boundary of said Lugenbuhl property around to the staked point known as Little Cove. Said point being indicated by a stake at the south entrance or beginning of a place called Little Bay in Biloxi Bay: said water front herein demised in its extension into said gulf and with all its privileges and appurtenances of fishing and bedding oysters to be extensive with the rights of said lessors under the laws governing the .same"—the lease of said land, water front, and privileges being for twenty-five years from date. Subsequently, at the March term, 1885, the board of supervisors of the county of Harrison, in which the rented property was situate, adopted an ordinance by which the said Gumbel *et al.,* lessees in the contract from Ott, were granted for a term of twenty-five years the "right to bank, plant, and cultivate oysters in the Mississippi Sound within the limits of the entire front of the land formerly owned by Peter W. Ott and Mary E. Ott, his wife, and by them rented to the above-named parties, with all the water privileges as described in said lease;" and the water in which the right to plant and cultivate oysters was granted is fully described in the ordinance of the board of supervisors as being in front of the lands mentioned in the lease from Ott, and its extent and boundaries clearly defined by channel and county lines. Said ordinance provides further that the said grantees' "right of property in the oysters so bedded, banked, and planted is hereby established within said limits in

said waters in the county of Harrison." The rights acquired by Gumbel *et al.,* under the lease from Ott, and by virtue of the ordinance of the board of supervisors, were subsequently, with the consent of the lessors, assigned and transferred to the Barataria Canning Company. The said company entered into possession thereof, and thereafter built an extensive canning factory on the lot demised, and bedded, banked, planted, and cultivated oysters over the entire space of water described in the ordinance hereinbefore referred to, planting many barrels of shells annually and building up a very extensive and valuable oyster bed. For many years after the date of its entry the appellant operated a canning factory upon the lot so leased, taking from the oyster bed which it had planted the necessary supplies to enable it to continue its business of canning oysters. This mode of business continued uninterruptedly until October, 1903, when, after considerable negotiation, a deed was executed by appellees to appellant, in which the following provisions are found: "For and in consideration of six thousand dollars cash paid and the further consideration of the surrender and cancellation of a certain lease heretofore executed by Peter W. Ott and Mary E. Ott, now of record in the chancery clerk's office in the said county, book 20, on pp. 307, 308, and in further consideration of the mutual and reciprocal covenants concerning the littoral and aquatic rights and privileges appurtenant to the land conveyed and retained or vested by law in the owners of said land by reason of said ownership," the grantors conveyed a certain lot therein described, being the same on which the canning factory of appellant was situated. After describing the lot, the said deed continues:

"The above described land is hereby granted in fee simple with the following reservations and none other:

"First—Any and all littoral and aquatic rights and privileges appurtenant and attached to said land or vested in the grantors as the owners of said lands are hereby expressly reserved so far as said rights and privileges lie to the eastward and northward

of that certain line which has its beginning point on the Bay of
Biloxi, and running thence in a southwardly direction to the
center of the channel of the said Bay of Biloxi, and established
in the following manner:

"Beginning at the northwest corner of lot number 2, of
square number 5A, according to the plan of said Summerville,
so recorded as aforesaid, and running thence due east 230 feet
to the beginning of said line; thence angling right 70 degrees
and 23 minutes, bearing south 19 degrees and 37 minutes into
the water and toward Deer Island.

"It being the purpose of this instrument to grant to the said
Barataria Canning Company all such littoral and aquatic rights
and privileges appurtenant and attached to said land or vested
in the said grantors as owners of said land as may be exercised
wholly to the westward and southward of the said line so estab-
lished, and this grant is made irrespective of what the actual
conformation of the shore line may be or become; and it is ex-
pressly understood that the said Barataria Canning Company,
by its aceptance of the grant evidenced by this instrument, shall
for itself, its legal representatives, and its successors in interest
disclaim any right or claim to the exercise of any littoral and
aquatic rights and privileges appurtenant and attached to said
land or vested in the grantors as the owners of the said land to
the northward and eastward of said line so established, no
matter what the actual conformation of the shore line may be or
shall be or become or be made, and the respective concessions
and disclaimer here made by the parties hereto each in favor
of the other shall be held and understood as reciprocal and as
furnishing mutual consideration each for the other."

After the execution and delivery of this deed, the appellees,
claiming that, by virtue of the stipulations and reservations con-
tained therein, they had acquired the right to gather oysters in
all the waters lying to the east and north of the line described in
said deed, entered upon the said waters, sent schooners fully
equipped with crews and necessary dredges and tongs used in

the gathering of oysters, and caught, took, and carried away, disposed of, and converted to their own use, large quantities of oysters from the beds so banked and planted by the appellant in the waters described and granted by the ordinance of the board of supervisors. Several suits were filed by the appellant, and the appellees warned to keep away, and not break or enter the close of the appellant as therein described; but appellees failed to heed the warning, refused to cease their operations, and openly announced their intention of continuing to gather oysters in the manner and from the beds as they then were, whereupon the appellant filed its bill of complaint, asking that the appellees be enjoined and restrained from further trespass upon the premises and waters described, and from gathering oysters from the beds so banked and planted by the appellant. Appellees filed an answer to the bill of complaint, admitting the fact of the lease and occupancy by appellant, but denying that it acquired any exclusive right by virtue of the ordinance adopted by the board of supervisors. Making their answer a cross-bill, appellees averred that they were entitled, under the terms of the deed which they had executed to the Barataria Canning Company in October, 1903, and the cancellation of the lease made by that deed, to the exclusive right of gathering oysters from all that part of the Bay of Biloxi which lies to the northward and eastward of the line agreed upon by the parties as stated in the deed; that the effect of the stipulations and reservations in the deed was to vest in appellees all rights to the oysters which were bedded, planted, or growing in the water described, and that the Barataria Canning Company, by accepting the deed in question, expressly "abdicated and abandoned all its littoral and aquatic rights in and to the waters lying to the northward and eastward of said line agreed upon;" that one of the "main inducements and primary considerations" which moved them to enter into the deed in question was that they might thereby acquire the valuable and extensive beds containing "large quantities of oysters of the best and most marketable and valuable

quality" lying in the waters in question.   The cross-bill further averred that prior to the granting of the lease in 1885 the said Otts had themselves planted oysters in various parts of the waters described, and that they were entitled to the right to gather oysters from these waters at the date of the lease, and that by cancellation of the lease by the stipulations of the deed these rights revested in appellees, and gave them the exclusive right to plant, cultivate, and gather oysters in the waters of the gulf in front of their property.   Wherefore appellees (cross-complainants) prayed that the bill of complaint be dismissed, that an accounting be had of all oysters removed by complainant subsequent to date of cancellation of its lease, and that the Barataria Canning Company be perpetually enjoined from gathering oysters from said waters or otherwise interfering with appellees in conducting their business therein.   A demurrer to their cross-bill having been overruled, appellees filed a motion to dissolve the injunction which had been granted upon the filing of the original bill of complaint.   Testimony was taken upon that motion by which the state of facts hereinbefore set out was proven.   In addition appellees were permitted to introduce parol testimony tending to prove that, while they had no conversation or agreement with an officer of appellant company, it was their understanding that the legal effect of said deed of October 14, 1903, was to vest in them the exclusive right to gather oysters northward and eastward of the line located by the deed, and that it was their intention, in executing the deed, and the moving consideration therefor, that the Barataria Canning Company was to surrender to them all its rights in the oysters planted and bedded in the waters described and lying in front of their property and northward and eastward of the line indicated.   At the conclusion of the hearing the motion to dissolve the injunction was sustained, and an appeal granted the Barataria Canning Company, "in order to settle the principle of law in this case, and to avoid unnecessary expense and delay."

Several questions are presented by this record which must

necessarily be considered in arriving at a proper decision of the controversy. Several others are urged upon us by the arguments and briefs of counsel, which are not involved directly herein, and which are therefore neither considered nor decided. Our consideration is limited to questions vital to the determination of the instant case.

The first inquiry arising is what rights the assignors of appellant acquired by their lease from the Otts in February, 1885. In addition to the lot of land demised by the contract, the lessee acquired "all the exclusive rights of said lessors to the water front on said sound or gulf of all lands owned by said lessors," and, further, "said water front herein demised in its extension into said gulf, with all its privileges and appurtenances of fishing and bedding oysters, to be extensive with the rights of said lessors under the law governing the same." It will be noted that this lease was executed on the 12th day of February, 1885, and the query naturally suggested is what right owners of land fronting on the Mississippi Sound had at this date in the land under the water beyond low water mark. The lessees in this case were granted the privilege of fishing and bedding oysters coextensive with the rights of said lessors, whatever those rights may have been, however great or small their extent. In the absence of express statute, the general rule that the owners of land bounded by the sea possess no exclusive right to the soil under the water beyond high water mark is so firmly established, so universally recognized, as to be almost axiomatic. 3 Kent's Com., sec. 427. At the date when this lease was executed the abutting landowner possessed simply the right which was enjoyed by the public generally of fishing in the waters in front of his property and of gathering oysters from natural beds, but this ownership carried with it no exclusive right to the water itself or to the fish and oysters therein. The waters were public domain, free to the common use of all citizens of the state. The abutting landowner was vested with certain rights of use and control over his water front. These rights consisted chiefly of the privilege of

landing his boats, hauling his nets, the gathering of seaweed and shells, and taking sand from the beach between the high and low water marks; and in some jurisdictions these rights have been held to include the right to erect wharfs and piers and bath houses in the water in front of his property. These privileges he enjoyed by virtue of his ownership of land fronting on the seashore, but at the date of the lease here reviewed he owned as to the water itself, or the fish and oysters in the water, or the soil under the water, no right of use or enjoyment greater than that possessed by every other citizen of the state. So that the lessees by this contract acquired as to the water front simply the right of landing its boats, erecting its wharves, and conducting such other operations to which the seashore might conveniently be devoted, connected with and incidental to its canning business. These were all the rights of said lessors under the laws governing the same, for they had no private or exclusive "rights as to fishing or bedding oysters." The law regarding the planting and bedding of oysters which controlled in this state at the date of the lease in question is found in § 956, Code 1880, by which the boards of supervisors of the respective counties within the state were granted full power and jurisdiction for the protection and preservation of the oysters growing and being grown within the territorial limits of each county respectively, with the power to secure a private right of property in oysters banked, planted, or cultivated in the waters of the county. And in order to carry these powers into execution the board of supervisors were authorized to pass ordinances in reference thereto, and "such ordinances shall from the date of their adoption have the same force and effect as if enacted by the legislature of this state, and shall remain in force until repealed by said board." With full knowledge of this law, the lessees, having procured from their lessors a lot on which to erect a canning factory, having obtained the exclusive right to the use of the water front for the purposes incident to the operation of such canning business, next applied to the board of supervisors (the

proper tribunal, vested by law with sole and exclusive jurisdiction over the subject-matter), and procured from it a grant for the period and term of twenty-five years of bedding, planting, and cultivating oysters within the waters—the water front to which they had acquired the right of use from the Otts. In our judgment, this was a proper exercise by the board of supervisors of an authority which had been expressly and constitutionally delegated to it by the legislature of the state, and such grant was not void as being *ullra vires* their powers. *Martin* v. *O'Brien,* 34 Miss., 36. This ordinance vested in the grantees "a right of property in the oysters so bedded, banked, and planted within such limits within said waters within the county of Harrison," and the ownership thus acquired became vested property rights, which no subsequent legislation could repeal or affect, and, in the instant case, none has been attempted by the legislature or board of supervisors.

This brings us, then, to the consideration of the relations and attitude occupied by the parties, respectively, prior to and at the date of the execution of the deed of October 14, 1903. They were as follows: The Otts, as lessors, were entitled to the annual rent for the demised premises, as stipulated in their indenture of lease. They had the right to use the beach and water front of their property in any manner which would not interfere with the business of their lessee carried on upon the leased premises. The Barataria Canning Company was entitled to the possession of the rented lot upon which its canning factory was located, to the use of the water front of the other portion of the property owned by its lessors which fronted on the gulf or sound. This much it acquired as lessee of the Otts. It was also vested with the absolute ownership, by virtue of the grant of the board of supervisors, of all the oysters which it had banked, planted, and cultivated in the waters described in the ordinance. This it acquired, not by reason of the lease from the Otts, for the Otts themselves possessed no such right of ownership at the date of their lease. The exclusive privilege of

gathering oysters in the waters described, with a property right in the oysters planted therein, was granted to it by the ordinance of the board of supervisors; and having entered and acted with the approval and sanction of the lawful authority to which the exclusive jurisdiction had been delegated, the oysters planted by it became its sole property as against the world. With this understanding of the relative rights of the parties, passing to the consideration of the deed of October 14, 1903, we find the following provisions and stipulations: (1) The lease existing between the Otts and the Barataria Canning Company was to be cancelled and surrendered. The effect of this provision was to deprive the Barataria Canning Company of the privileges which it had acquired and enjoyed under the provisions of said lease, and these, so far as the water. and water front are concerned, were simply, as hereinbefore pointed out, the right to use the beach and water front for purposes incidental to the operation of the canning factory. (2) The title to the lots on which the canning factory stood was converted from a leasehold estate to one in fee simple. Appellant thereby acquired an absolute title to the real estate, with such appurtenances as were conveyed by the express provisions or legal effect of the deed. (3) Any and all "littoral and aquatic rights and privileges appurtenant and attached to said land or vested in the grantors as owners of said land" were expressly reserved within certain limits, and it is further stated that the acceptance by the Barataria Canning Company of the deed was to be considered as an express abandonment by it of all "littoral and aquatic rights" which were reserved to the grantors. We find, then, that this was a deed in fee simple conveying certain lands, with a reservation of certain rights, to the grantors, and these rights are stated as being the "littoral and aquatic rights appurtenant to the land or vested in the owners by virtue of their ownership." It is a fundamental principle of construction of deeds that the reservation must be consistent with the grant of the fee, and also must be of some portion of the granted premises, which, without

the reservation, would be conveyed by the deed. Whatever may
have been the exact meaning which the scrivener intended to
convey by the expression "littoral and aquatic rights," it appears
manifest that these rights, as to a large portion of the water
front described, were appurtenant to lands not conveyed nor in-
tended to be conveyed by the deed. "Littoral and aquatic
rights" are simply those rights which, in default of special
statutory provisions to the contrary, pertain to lands abutting
upon tide waters to which the common-law doctrine of riparian
ownership does not apply. They have hereinbefore been suffi-
ciently indicated. In the instant case the reservation in the deed
as to other lands not conveyed by the terms of the deed simply
retained, uselessly and unnecessarily, rights which by law are
appurtenant to the land on account of its location as abutting
on the seashore. So far, then, as this reservation is concerned, it
was, in its legal effect, meaningless and inoperative. It is open
to very serious doubt whether one having land to which, on
account of its location, certain rights attach by operation of law,
can convey the land itself, and yet retain the privilege which
pertains by legal effect to the land. It is to be gravely ques-
tioned whether one owning land abutting on the tide water, or
land situated on the streams to which the doctrine of riparian
ownership applies, can in the one instance convey the land and
reserve the littoral rights appurtenant thereto, or in the other
convey the land and retain any claims to the soil under the
water or the riparian right to accretions which, subsequently
formed, would attach to the land itself as a legal incident. The
view that such rights are adjuncts to the land, attaching thereto
by operation of law on account of location, and not subject to
separate, divisible ownership, is worthy of serious considera-
tion. *Blakeslee Mfg. Co.* v. *Blakeslee Iron Works*, 59 Hun.,
209 (13 N. Y. Supp., 493). However that may be, it is not
necessary to the determination of this controversy for us to ex-
press a definite conclusion. The attempted reservation in the
deed now under review can be given its full legal scope and ef-

fect, and still in no wise affect the rights of appellant to the oysters which it had bedded and planted, and in which a right of property had been lawfully granted it. A reservation in a deed must not only be, as hereinbefore pointed out, of something which would otherwise, by operation of the terms of the deed, be conveyed, but it must necessarily be of something which belongs to the grantor at and before the execution of the deed. Property cannot be conveyed by reservation, and yet that is what is attempted to be done if the construction contended for by appellees be sustained. At the date of the deed appellees owned the land and the water front, with all littoral and aquatic rights lawfully appurtenant thereto. Appellant owned the oysters which it had planted and bedded in the waters in front of the land. By deeding a portion of the land and reserving certain rights which are merely incident to the land, appellees claim to have acquired title to the property of appellant. This view cannot be sustained. Appellant, being the owner of the oyster beds which it had planted, cannot be divested of its ownership by implication, and appellees can only acquire those rights by express grant. It is no argument upon either side to say what the intention of the parties was. The deed must speak for itself, and if the reservation be so indefinite as to convey no certain meaning, it will be held to be ineffectual. *Moore* v. *Lord,* 50 Miss., 229. "What one party to a contract understands or believes is not to govern its construction, unless such understanding or belief was induced by the conduct or declaration of the other party." *Bank* v. *Kennedy,* 84 U. S., 19 (21 L. ed., 555). In this case there was no misrepresentation on either side, as the parties dealt "at arm's length," and the deed was placed in escrow until accepted and delivered. It follows, therefore, that appellant is vested with the sole and exclusive ownership of all oyster beds which it has planted, and this ownership appellees should be required to respect. This does not deprive appellees of any "littoral or aquatic" rights which they may possess under the law, for such do not conflict with the

rights of appellant, vested in it by the ordinance of the board of supervisors. We expressly decline now to decide as to the respective rights of the parties or the public after the expiration of the twenty-five years' grant which appellant acquired from the board of supervisors, and we do not intimate any view on this point.

*Wherefore it follows that the action of the court in dissolving the injunction was erroneous, and the decree is reversed, and the injunction reinstated and made perpetual, and the cause remanded.*