BOARD OF SUP'RS OF COVINGTON COUNTY *v.* STATE HIGHWAY COMMISSION.

(Division B. March 18, 1940.)

[194 So. 743. No. 34092.]

W. U. Corley, of Collins, for appellant.

**E. R. Holmes, Jr.,** Assistant Attorney-General, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The Board of Supervisors of Covington County brought suit against the State Highway Commission for alleged damages in laying out a road across the sixteenth section—township 8 north, range 15 west, in Covington County.

The bill of complaint set forth that: The sixteenth section lands were acquired, in trust, for the use and benefit of the inhabitants of the township; that the board of supervisors had been vested with control of the lands for the benefit of the inhabitants; that the sale of such lands was prohibited by section 211 of the Constitution; and that the board of supervisors cannot give title or any

equity in such lands other than the existing lease, as the same is reserved always and for all time for the support of the school within said section and township.

The bill further charges that in accordance with section 211 of the Constitution, the Legislature enacted statutes which were brought forward in the Code of 1930, being section 6759 thereof, which section provides: "None of such lands shall ever be sold, but they shall be leased; such lands not in a city, town or village, for a term not exceeding fifteen years, and that in a city, town or village, for a term not exceeding twenty-five years, on condition of the payment annually or the rents reserved. No timber shall be cut or used by the lessees except for fuel and necessary repairs and improvement on the land."

Also, that in addition thereto, section 6760 of the Code of 1930 especially provides that the county shall have full control over such lands, through their respective boards of supervisors; that they shall have full jurisdiction and control thereof, and of all funds derived therefrom, which shall be expended for educational purposes only.

It was further charged that section 6761 of the Code of 1930 makes special provision for the sale of timber, gravel and acid iron earth, and that such sale is vested solely in the board of supervisors of each county.

It was then alleged that the complainant had leased certain portions of the sixteenth section to certain persons (named in the record) of the township; that all of said leases were recorded; and were in accordance with the statutes above mentioned.

It then charged that a certain highway, known and designated as State Highway No. 84, running in part from Collins, Mississippi, to Leaf River, was in existence before the wrong complained of here was alleged to have been sustained; that it was being maintained by the defendant, but that the defendant desired to change the location thereof, and, to that end, secured, or attempted to secure a right-of-way between the two points for the con-

struction of the new Highway No. 84, entirely leaving the old highway to itself; that, to this end, it approached the lessees and purchased from them a right-of-way, being a one hundred foot strip through and across said lands; and, subsequent to such acquirement, the defendant, on the 7th day of June, 1938, secured another deed to a strip one hundred and twenty feet across said lands for a named consideration; and, also, they acquired a right-of-way to change a water course on said lands for the protection of the said road so constructed or to be constructed.

The complainant then charged that the defendant knew at the time it was secured, or caused to be secured, that the lessees had no power to make a fee sale or execute a warranty deed therefor; that said lands were held in trust for the purpose of educating the youth of said township; and that, with the knowledge that the grantors were without authority to make conveyance, the Highway Commission, knowingly, unlawfully and wilfully, without consent of the custodians of the lands mentioned, entered upon said lands for a distance of one mile, one hundred and one hundred and twenty feet in width, and appropriated it to the public use; and cut and destroyed all of the merchantable timber. It was further alleged that all of the acts complained of constitute waste, and that the statute prohibits waste by the lessees or anyone else; that the complainant was not consulted about the right-of-way, or about the timber; but that it unlawfully and wilfully entered thereon which resulted in waste and ruin, and for which no compensation was made.

It further alleged that the deeds should be cancelled and held for naught, and prayed for a judgment for the damage to the rights of the inhabitants, for the timber, et cetera, and for general relief.

Prior to the trial of the case, a compensation was agreed upon and paid for the timber, et cetera. The agreement recited that in consideration of payment of $225 by the Highway Commission to the complainant, all

damages occasioned by the cutting and removing of any and all timber, the removing and replacing of any dirt, sand, gravel or mineral earth, digging or changing of any ditches or channels, and any and all damages flowing therefrom were satisfied. Settlement was made in full, and all allegations of the bill with reference thereto were stricken by agreement. It is understood that the above mentioned settlement is in full for all damages referred to, including those necessarily incidental thereto. It was agreed that the special demurer for the improper joinder, as defendant of the lessees of the sixteenth section lands, be stricken and a general demurrer interposed by the Highway Commission submitted.

In the general demurrer, it was stated that: There is no equity on the face of the bill. The bill shows on its face that: The complainant has a complete, speedy and adequate remedy at law, that the Highway Commission obtained all private property rights in and to the land involved by payment of due compensation therefor, and used only the public property rights in said land without compensation. That the property rights in the sixteenth section land involved were taken and damaged for necessary public purposes, and the action is not subject to judicial review in the absence of fraud or abuse of discretion. That the lands involved are sixteenth section lands and cannot be sold at any time for any compensation, and that the lands were used for public highway purposes only (and purposes necessarily incidental thereto), and therefore no right of action for taking or damaging such lands in such case exists. That it was necessary to appropriate and damage part of the sixteenth section lands in order to effectively carry out the legislative and constitutional mandate of constructing a comprehensive system of state highways. Also, that laying out the road was authorized, proper and necessary; and inured to the benefit of all of the people in the township as well as the entire state, and therefore no cause of action existed for compensation for unavoid-

able damages or for appropriation of such lands to public purposes other than those for which they are held in trust. That the taking of property devoted to a public use for a different public use does not give rise to a cause of action where such taking is not shown to be unauthorized, unnecessary or accomplished by reason of fraud or an abuse of discretion.

The chancellor sustained the demurrer, dismissed the bill, taxed the complainant with the court costs, and granted an appeal to the Supreme Court without bond.

It appears from the foregoing that compensation was made to the lessees for their private interests, also, that compensation was made for the timber, earth, gravel, et cetera, taken from the land. The question presented is: Is the board of supervisors entitled to recover damages from the State Highway Commission for the public interests, which have been vested in the inhabitants for educational purposes? The chancellor in the court below relied upon the case of Washington County v. Board of Mississippi Levee Commissioners, 171 Miss. 80, 156 So. 872, as controlling this question. In our opinion, there is no legal or constitutional distinction in the principles involved in this case and that of Washington County v. Board of Mississippi Levee Commissioners, supra. Section 17 of the State Constitution prohibits the taking of private property for public use without compensation, but does not prevent the imposition of an additional public use upon property already set aside for a public purpose. The public interest is subject to legislative control, and the Legislature may devote public property to an additional public use without compensation for such use. Public highways are for the benefit of the public, and their construction across sixteenth sections will benefit townships and make the property left more desirable under private leases.

It was held in the case of City of Canton v. Canton Cotton Warehouse Company et al., 84 Miss. 268, 36 So. 266, 105 Am. St. Rep. 428, 65 L. R. A. 561, that the Leg-

islature has power to divest municipalities of all control over their streets, and authorizes their use by a corporation without compensation to the municipality. Under Section 211 of the State Constitution, the Legislature, of course, could not grant to private corporations the use of public property, but the State Highway Commission is a public corporation serving only the public interests. In our opinion, the provisions of Section 170 of the Constitution and Chapter 122 of the Code of 1930 are as comprehensive as the sections of the Constitution cited in the case of Washington County v. Board of Levee Commissioners, supra. Section 170 of the Constitution authorizes creation of the State Highway Commission, and the granting of control over such highways as were designated by the Legislature for construction and maintenance. Section 4998 of the Code of 1930 provides that the Highway Commission shall have complete control and supervision, with full power and authority to locate, relocate, widen, alter, change, straighten, construct and reconstruct any and all roads on the state highway system (as therein defined); and, also, shall have full and complete authority for the making of all contracts, surveys, plans, specifications and estimates for the location, laying out, widening, straightening, altering, changing, constructing, reconstructing and maintaining and securing rights of way of any and all such highways; and to authorize the employees of the department to enter upon private property for such purpose. It is further authorized and empowered to obtain and pay for rights of way, specifying minimum widths for different classes of highways; and for the condemnation of all land or property needed for purposes therein specified. The powers of the Commission given in Section 5006 of the Code are comprehensive and provide for full and general supervision over all matters relating to the construction or maintenance, letting contracts, the selection of material to be used, full power to change, relocate, alter the grade or location as may be

deemed necessary, and to acquire necessary land by gift, purchase or condemnation. The section is elaborate, and contains quite comprehensive powers, all for the public benefit. The functions of the Commission being public, the taking of necessary land would be for a public purpose.

In the case of Washington County v. Board of Levee Commissioners, supra, the Board of Levee Commissioners deemed it necessary to change the location of the levee of the Mississippi River in Washington County, and they condemned and appropriated certain sixteenth section lands for that purpose. In the construction of the levee, other sixteenth section lands decreased in value by being thrown outside of the levee, for which no compensation had been made. The Levee Commissioners assembled, and made awards to the county for such sixteenth section lands taken or damaged by being thrown outside the levee. From said awards, the levee board appealed to the chancery court, on the ground, among others, that it was authorized to enter upon, take, use and appropriate the property, and was not required to compensate the county therefor. The interests of the respective lessees of these sixteenth section lands had been condemned and paid for, and their interests were in nowise involved in that case. "The county answered the appeal of the levee board by denying that the board was authorized to enter upon, take, use, and appropriate the property without compensating the county therefor, and alleged that said board entered upon and took the property without authority of law, in a proceeding to which the county was not a party, and that the awards made to the county by the levee damage commissioners were inadequate to compensate the county for the lands taken or damaged or destroyed." The chancery court held that the Board of Levee Commissioners was not liable to the board of supervisors for the public interests vested in the board of supervisors for the benefit of the inhabitants. And, in the course of the opinion referred to, Section 233 of the

Constitution was cited; which section grants the levee districts ''authority and full power to appropriate any private property in their respective districts for the purpose of constructing, maintaining, and repairing the levees therein, and further made provision for the assessment of proper compensation for private property so taken, or for any damage sustained in consequence of such taking. In this Constitution no provision is made for compensation to any agency of the state for public lands taken or appropriated to the public use of building levees.

''Pursuant to the constitutional grant of authority to appropriate private property for levee purposes, and in the exercise of its power and authority over public lands, the Legislature subsequently enacted chapter 92, Laws of 1904, providing that the 'board of levee commissioners is hereby authorized to enter upon, take, use and appropriate any property in said levee district, for the purpose of constructing, maintaining and repairing its said levee.'

''It appears to be well settled that, in the absence of constitutional prohibition, the Legislature may authorize the taking of property devoted to a public use for a different public use, and a grant of the power of eminent domain to a municipal corporation for the erection of a particular public improvement will authorize the taking of public property, where from the nature of the improvement authorized it is impossible or impracticable to construct the same without encroaching on such property. 10 R. C. L. 198. The question then arises as to whether or not the prohibition in the Constitution of 1890 of the sale of sixteenth section lands takes from the Legislature its power to appropriate such lands to public purposes other than that for which they are held in trust, either with or without compensation to the township school funds.

''The makers of the Constitution of 1890, who wrote into it the prohibition against the sale of these school

lands, inserted into the same Constitution a mandatory provision that a system of levees should be maintained for the reclamation and preservation of that vast body of fertile, alluvial lands lying along the Mississippi river in what is known as the Yazoo-Mississippi Delta, which includes within this vast acreage many sixteenth sections. . . .

"By this levee system, a large number of sixteenth sections lying in this Delta have been reclaimed and brought from a state of practical worthlessness to one of great value, and the makers of the Constitution knew that the value of these school lands, as well as the vast acreage comprising the Delta, could be preserved only by the maintenance and continued enlargement and improvement of the levee system, and, consequently, they required that the system should be maintained, and made such provisions as were necessary to enable the Legislature to accomplish the required and highly beneficial purpose.

"They also knew, as all men must have known, that this vast levee system extending for a distance of approximately two hundred miles, and designed to hold back the flood waters of this great river, must be constructed according to well-ordered and carefully designed plans, which must be complete and co-ordinated for the entire system. It was manifest that, in the preparation and consummation of the plans for this gigantic engineering enterprise, which called for engineering skill and ability of the highest order, the line of these levees must in all probability cross some of the sixteenth section lands which are dotted over the area to be traversed, and that certainly other sixteenth section lands would be thrown partially or wholly outside the levee, or, in other words, between the levee and the river, thereby practically destroying what little value such sections had in their natural state.

"In view of this absolute necessity of appropriating or damaging some of these school lands in order to ef-

fectively carry out the constitutional mandate, the right to appropriate so much of them as might be necessary for the accomplishment of the greater and paramount benefit to all the people in the district, as well as the entire state, must be necessarily implied from the mandate to construct and maintain an effective system of levees.''

It is necessary for the enjoyment of sixteenth section lands, and for their development, that there be ingress and egress from them to the markets and to other places such as schools, churches, social gatherings, et cetera; and, therefore, it is deemed necessary that highways be constructed and maintained for that purpose. The State expends large sums of money in constructing highways for the benefit of the people. Sixteenth section lands not connected with any highway system would be relatively of little value, if any, because of the necessity of having access to and from them for the purposes named. The State also expends large sums of money for educational purposes, and all of the children of the State are afforded, at State expense, educational facilities within convenient reach. Under our modern development of the school system, children are transported to the schools along the public highway. Generally speaking, the State highways are superior for purposes of travel, and expedite the transportation of children to and from school, as well as being a necessity for the public. If it were held that highways could not be constructed through sixteenth section lands because of the absence of power to condemn to another public purpose, it would be necessary to go around them and would leave them without facilities for travel, so necessary and desirable to modern life. The courts have given liberal interpretations to powers of the State Highway Commission in carrying out the important purposes for which it was created, and to secure to the public the benefit that such state highways are designed to give.

In Trahan et al. v. State Highway Commission et al., 169 Miss. 732, 151 So. 178, the Court held that: The

statutes respecting highways do not require the highway there involved to follow the existing roads between points mentioned in the statute—Laws of 1924, Chap. 278, as amended by Laws of 1926, Chap. 218; Laws of 1928 (Extra Session), Chap. 45; Code of 1930, Sec. 4997. The "Highway commission could change location and fix length of state highway in conjunction with federal-aid authorities, to shorten its mileage and eliminate two grade crossings." Sections 4998, 5006, of the Code of 1930 were cited. It was further held that the "Court cannot give language of statutes respecting highway commission's powers restricted or over-technical interpretation." It still further held that in "giving highway commission power to construct links of unimproved road not over 10 miles long, being susceptible of several different meanings, must be given interpretation adopted by departments acting under it to effect that statute refers to connecting gap, not to straightening of highway already connected." It was also held that "In construing constitutional provision, court will look to circumstances under which provision was ordained, objects, evils to be avoided or cured, and thereby arrive at reasonable meaning, keeping in mind that provision is intended to stand for long time." And, the "Const. 1890, Section 170, as originally ordained, conferred full jurisdiction over roads and bridges upon the boards of supervisors, and as amended in 1924 (Laws 1924, c. 143), it provides that Legislature may have power to designate certain highways as state highways and place such highways under control and supervision of state highway commission for 'construction' and maintenance. The word 'construction' in its ordinary sense means to build or erect something which theretofore did not exist."

The case discloses that the Court gives to the statutes involved here a liberal interpretation so as to give to the public the benefits intended to be derived from an improved system of state highways, and it certainly could not be held that constructing such a highway through

a sixteenth section would seriously impair the value of that section to the inhabitants of the township. The Legislature has the power to deal with sixteenth sections in such way as to make them accessible to the ways of travel, and it does not divest the inhabitants of the township of the proper use of their property in any constitutional sense. The provisions of Section 211 of the Constitution were not designed to prevent laying out highways through sixteenth sections, and no means of compensation has been specifically provided therefor. We think it was the intention, as it has been practiced, to permit highways to be laid through sixteenth sections for the general good and for the special benefit of the inhabitants without the necessity of condemnation proceedings. It would certainly militate against the use of sixteenth section lands and diminish their rental value if roads were not permitted to be constructed through them; and it is important that such roads be so constructed as to endure for a long time, if not forever. In other words, the laying out of a state highway which has been carefully planned is intended to exist so long as there is necessity for its continuance, and we do not think the complainant was entitled to recover anything in the present case.

The judgment of the court below is affirmed.