CRARY, et ux. *v.* STATE HIGHWAY COMMISSION.

Dec. 14, 1953

No. 39014 46 Adv. S. 25 68 So. 2d 468

*Morse & Morse,* Gulfport, for appellants.

286

*Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Miss. Code 1942, Sec. 6066, gives riparian owners bordering on the Gulf of Mexico, Mississippi Sound, and waters tributary thereto, the "sole right of planting and gathering oysters and erecting bathhouses and other structures in front of" their lands, for 500 yards from

the shore measured from the average low-watermark. The questions to be decided are (1) whether Sec. 6066 vested in appellants inalienable property rights in such 500-yard area, not subject to the imposition of an additional public use on such area; (2) whether the construction by the state of a bridge across the Bay of St. Louis, traversing part of appellants' 500-yard area, constituted the imposition of an additional public use upon property already set aside and held in trust for public purposes; and (3) if the first question is answered in the negative and the second in the affirmative, whether appellants are entitled under Miss. Const. Sec. 17 to compensation for the taking of the privileges granted them by Sec. 6066.

Mr. and Mrs. James O. Crary, appellants, brought this suit in the Circuit Court of Harrison County against appellee, State Highway Commission. The declaration charged that appellants owned a certain lot in the subdivision of Pass Christian Isles in Harrison County, "together with all riparian rights in front of said lot bordering on the Bay of St. Louis in Harrison County, State of Mississippi;" that as such owners they had the right under Miss. Code 1942, Sec. 6066, of planting and gathering oysters and erecting bathhouses and other structures in front of that lot bordering on the Bay of St. Louis "for a distance of 500 yards from the shore, measuring from low-watermark." It was averred that on June 19, 1951, appellee awarded a contract to a named contractor to construct a toll bridge over the Bay of St. Louis; that since that date a part of the bridge has been constructed so as to destroy appellants' riparian rights extending out into the Bay of St. Louis from said lot; and that in erecting this bridge the appellee has taken and damaged appellants' property for public use without due compensation being first paid to appellants, as required by Miss. Const. 1890, Sec. 17. Hence appellants charged that by such taking and damaging of their

property for public use they had been injured in the sum of $25,000, and asked for judgment in that amount.

Appellee, defendant below, filed an answer, and a special plea in bar. This plea averred that the toll bridge referred to was constructed under Miss. Laws 1950, Ch. 406, which provided that the bridge would be constructed over waters "wholly within the territorial limits of the State of Mississippi," and that appellee in building the bridge would be performing "an essential government function." Appellee asserted that the Bay of St. Louis is a navigable body of water, an artery of commerce, and a "public highway" within the meaning of Code Sec. 8413; and that the construction of the toll bridge "is the imposition of an additional public use upon property already set aside for a public purpose without requiring the payment of compensation therefor, and that said defendant is not liable to said plaintiffs in any sum of money whatsoever." It was pleaded that the soil and minerals underlying the waters of the Mississippi Sound, of which the Bay of St. Louis is a part, are owned by the state as trustee for its people, subject only to the paramount right of the United States to control commerce and navigation, and subject to the provisions of Miss. Const. Sec. 81; and that any rights granted appellants by Code Sec. 6066 constitute merely a revocable license, subject to the prior right of the state to impose an additional public use upon the lands without requiring the payment of additional compensation. No evidence was heard. The circuit court sustained this special plea and dismissed the suit, and from that action this appeal was taken. We affirm the judgment of the trial court.

Appellants argue that the Code of 1942, Sec. 6066, granted them certain property rights, and that the erection of the bridge in the alleged manner constituted the taking of such property rights without due compensa-

tion, in violation of Miss. Const. Sec. 17. Sec. 6066 provides:

"The sole right of planting and gathering oysters and erecting bathhouses and other structures in front of any land bordering on the Gulf of Mexico or Mississippi Sound or waters tributary thereto, belongs to the riparian owner, and extends not more than five hundred yards from the shore, measuring from the average low watermark, but where the distance from shore to shore is less than one thousand yards, the owners of either shore may plant and gather to a line equidistant between the two shores, but no person shall plant in any natural channel so as to interfere with navigation, and the said riparian rights shall not include any reef or natural oyster bed and does not extend beyond any channel. Stakes of such frail material as will not injure any watercraft may be set up to designate the bounds of the plantation, but navigation shall not be impeded thereby."

This statute gives riparian owners, or more properly littoral proprietors, 56 Am. Jur., Waters, Sec. 273, "the sole right of planting and gathering oysters and erecting bathhouses and other structures in front of" their land for 500 yards from the average low-watermark. It also expressly prohibits any person from planting in any natural channel so as to interfere with navigation. But the contention that the construction of the bridge, which for purposes of this suit must be assumed to have deprived appellants of at least the statutory privileges claimed by Sec. 6066, took appellants' rights of private property without due compensation, in violation of Const. Sec. 17, must be considered in the light of Miss. Const. Sec. 81, which provides:

"The legislature shall never authorize the permanent obstruction of any of the navigable waters of the state, but may provide for the removal of such obstructions as now exist, whenever the public welfare demands. This section shall not prevent the construction, under proper

authority, of draw-bridges for railroads, or other roads, nor the construction of booms 'and chutes' for logs in such manner as not to prevent the safe passage of vessels, or logs, under regulations to be provided by law.''

In applying Const. Sec. 81, the Legislature enacted Code Sec. 8413, which states that ''All bays, inlets, and rivers, and such of the lakes, bayous, and other water-courses as shall have been, or may be, declared to be navigable by act of the Legislature . . . shall be public highways.''

The meaning of Const. Sec. 81 and of these several statutes was considered in Money v. Wood, 152 Miss. 17, 118 So. 357 (1928). Wood sued Money and others and sought to enjoin them from erecting a structure in the Mississippi Sound in front of his home in Biloxi. The defendants had attempted to buy lands from the state lying under the waters of the Mississippi Sound for the purpose of constructing an artificial island with hotels, streets and residences. The Court held that Wood was entitled to the injunction; that the land commissioner had no authority to sell the lands under the Mississippi Sound; that Const. Sec. 81 had the effect of providing that the state as trustee has no right or power to dispose of lands under the tide and navigable waters of the state, which are held in trust by the state for the people, in any manner or extent inconsistent with the purpose for which the trust exists; and that such waters are re-garded as navigable.

In State v. Stewart, 184 Miss. 202, 184 So. 44, 185 So. 247 (1939), the state by the attorney general brought suit against Stewart and others. Defendants had in-stalled machinery to dredge sand and gravel for com-mercial purposes from the bed of Bayou Bernard in Harrison County, an inlet of the Mississippi Sound, and had already obtained from it a large quantity of sand and gravel. The bill sought to enjoin further operations,

and to recover damages for sand and gravel already removed. Defendants owned land up to the shore of Bayou Bernard. They contended that as riparian owners they owned the fee title of the bed of such body of water. This argument was rejected, and the Court held for the state. It was said that the right to the soil of owners of land bounded by the sea and other navigable waters, where the tide ebbs and flows, extends only to high-watermark; that the shore and the soil below ordinary high-water belongs to the state as trustee for the peoples of the state, and this ownership in trust is inalienable; that the state's title as trustee is subject only to the paramount right of the United States Government to control commerce and navigation; and that the state is without authority to surrender its sovereignty or cease to administer the trust for the purposes intended.

Both the Money and Stewart cases also held that Miss. Const. Sec. 81 applies to the waters in the Mississippi Sound, which includes the Bay of St. Louis, and the lands under such waters, and that such waters are regarded as navigable. Hence it follows that the Legislature in Code Sec. 8413 has determined that the Bay of St. Louis is a "public highway." Moreover, the State Highway Commission was authorized to erect the bridge in question by Miss. Laws 1950, Ch. 406. Sec. 1 of that act, authorizing the construction of a bridge, stated that the same was "wholly within the territorial limits of the State of Mississippi." By Sec. 2 the state granted to appellee "full easements and rights of way through, across, under and over any land or property owned by the state which may be necessary or convenient to the construction, acquisition or efficient operation of the project." Sec. 6 further provided in part: "That the accomplishment of the purposes stated in this act being for the benefit of the people of this state and for the improvement of their commerce and property, the State

Highway Commission in carrying out the purposes of this act will be performing an essential governmental function . . ."

██ █ Hence the waters and the soil under the waters over which the appellee erected this bridge are public highways and are owned by the state in trust for the people of the state. And the state cannot sell or transfer irrevocably the rights constituting that title. Code Sec. 6066, when construed consistently with these decisions and Const. Sec. 81, simply granted to appellants a revocable license of the privilege to plant and gather oysters and to build bathhouses and other structures. That privilege or license is necessarily subject to the superior right of the state to impose an additional public use upon such property already set aside for a public purpose, without requiring the payment of compensation for it. Const. Sec. 17 is not applicable, because the state has not taken any private property for public use. The damage sustained, if any, results not from a taking of the riparian owners' privileges in the Bay, but from the lawful exercise of the state's power to which this property has always been subject, and which has always been owned by the state as trustee for the people. It is this primary and superior title of the state as trustee for the people which frees the state from any liability to appellants in constructing this bridge. When the state implemented its title and responsibilities as trustee, for the public, by constructing this bridge, it was exercising its paramount power and superior title in the waters of and soil under the Bay of St. Louis, rather than taking the private property of anyone. Anno. 94 L. Ed. 1288, 1291, (1950). It was imposing an additional public use upon public lands.

In point on this rationale and in support of our decision is Board of Supervisors of Covington County v. State Highway Commission, 188 Miss. 274, 194 So. 743 (1940), where the Board of Supervisors sued the State

Highway Commission for damages caused by the Commission laying out a road across sixteenth section lands. In holding that defendant owed complainant nothing for such action, the Court said: "Section 17 of the State Constitution prohibits the taking of private property for public use without compensation, but does not prevent the imposition of an additional public use upon property already set aside for a public purpose. The public interest is subject to legislative control, and the Legislature may devote public property to an additional public use without compensation for such use. Public highways are for the benefit of the public, and their construction across sixteenth sections will benefit townships and make the property left more desirable under private leases."

The Covington County case followed an earlier decision to that effect in Washington County v. Board of Levee Commissioners, 171 Miss. 80, 156 So. 872, (1934). The Board of Levee Commissioners had taken certain sixteenth section lands for levee purposes, for which no compensation was paid. The Court said that "in the absence of constitutional prohibition, the Legislature may authorize the taking of property devoted to a public use for a different public use . . ." It was held that the Levee Commissioners owed no compensation to the county board of supervisors for placing the levees upon sixteenth section lands; that such lands were already dedicated to a public use, and the action of the commissioners simply subjected the property to an additional public use, for which no compensation was owed by the defendant.

Similar in principle to the foregoing cases is Frank W. Darling v. City of Newport News, 123 Va. 14, 96 S. E. 307, 3 A. L. R. 748 (1918), certiorari denied 249 U. S. 540, 39 S. Ct. 371, 63 L. Ed. 759. The State of Virginia had leased to Darling for a period of 20 years the oyster beds under the tidal waters of Hampton

Roads, as authorized by statute. Later the state granted to the City of Newport News the right to discharge its sewage into such waters. Darling sued for damages. It was held that the State of Virginia had the sovereign power and a public trust to use these waters for the public benefit. The lessee of the oyster beds took them subject to the right of the sovereign to again exercise the power consistent with its public trust. It was said that all privileges granted in public waters are subject to the exercise of the sovereign power over such waters, and an exercise of such power to the injury of the privilege granted "is not the taking of private property for public use, but only the lawful exercise of a governmental power for the common good." The Darling case was cited with approval and discussed in Pace v. State, 191 Miss. 780, 804-806, 4 So. 2d 270 (1941). Substantially to the same effect is Peck v. Alfred Olsen Construction Co., 238 N. W. 416 (Iowa 1931), on rehearing, 216 Iowa 519, 245 N. W. 131 (1932). The principle is summarized in 18 Am. Jur., Eminent Domain, Sec. 164, pp. 795-796, as follows: "Whatever rights a riparian owner may have in the bed and waters of a navigable body of water are subordinate to the public right of navigation, and an exercise of that right in any form which involves no physical occupation of the upland, however much pecuniary injury it may inflict upon a riparian owner, is not a taking in the constitutional sense. The same is true as to improvement of navigation in tidal waters. Accordingly, the United States or a state may construct works in aid of navigation in the bed of a navigable watercourse which wholly cut off access from the riparian land to the water, without incurring any obligation to make compensation."

Appellants rely upon Martin v. O'Brien, 34 Miss. 21, (1857), and Barataria Canning Company v. Ott, 84 Miss. 737, 37 So. 121 (1904). However, these cases involved

statutes and common law rules in existence prior to Sec. 81 of the Const. of 1890, and are not controlling here.

■■■ In summary, we conclude that the erection by appellee of the bridge constitutes the imposing of an additional public use upon property already set aside for public purposes, that the privileges granted by Sec. 6066 are subject to the exercise of the sovereign power over such waters for governmental purposes, and that an exercise of such power for the construction of the bridge to the injury of the privileges granted by Sec. 6066 is not a taking of private property for which compensation must be made under Miss. Const. Sec. 17.

Affirmed.

*Roberds, P. J., Hall, Lee* and *Holmes, JJ.,* concur.