## UNION PAC. RY. CO. *v.* DOUGLAS CO.

*(Circuit Court, D. Nebraska.  1887.)*

PUBLIC LANDS—GRANT TO UNION PACIFIC RAILROAD—SCHOOL LANDS.

It was the evident intention of congress by the act of July 1, 1862, (12 St. U. S. 491,) giving a right of way to the Union Pacific Railroad Company, to grant such right of way through those lands which by surveys should be found to be sections 16 and 36, the school sections which it intended to give to the future state of Nebraska, pursuant to the provisions of the organic act of 1854, (10 St. U. S. 283,) creating the territory of Nebraska.

*A. J. Poppleton*, for plaintiff.
*G. E. Simeral*, for defendant.

BREWER, J.   The question presented by the demurrer to the answer is this:   Was the Union Pacific grant of the right of way operative upon sections 16 and 36, the sections granted for school purposes to the state of Nebraska?   In 1854 the organic act (10 St. U. S. 283) creating the territory of Nebraska was passed, in which, by section 16, it is provided "that when the lands within the said territory shall be surveyed under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered 16 and 36 in each township in said territory shall be, and the same are hereby, reserved for the purpose of being applied to schools in said territory, and in the states and territories hereafter to be erected out of the same."   The Union Pacific Railroad Company's act, passed July 1, 1862, (12 U. S. St. at Large, 491,) provided, in section 2, "that the right of way through the public lands be, and the same is hereby, granted to said company for the construction of said railroad," etc.   These are the only sections that are material to this controversy.   The grant to the Union Pacific was later than the reservation for school purposes.   But the power of congress over lands of which the fee has not already passed and vested is unquestioned.   *Frisbie* v. *Whitney*, 9 Wall. 187, in which case the supreme court held that until the title of the pre-emptor had actually vested the power of congress was supreme.   See, also, the case of *State* v. *Bachelder*, 1 Wall. 109, in which the same doctrine was applied in respect to school sections.

The power of congress, then, being beyond dispute, the single question is as to the intent; and here I am met with the proposition that the term "public lands" has become, by settled construction, descriptive of those lands only which are in no manner reserved for any purpose.   The leading case cited in support of this is *Wilcox* v. *Jackson*, 13 Pet. 498, in which case is found this language:

"But we go further, and say that, whensoever a tract of land has once been legally appropriated to any purpose, from that moment the land thus appropriated becomes separated from the mass of public lands, and that no subse-

quent law or proclamation or sale would be construed to embrace it, or to operate upon it, although no reservation were made of it."

This language, which is very broad, must be construed in reference to the facts of that case; and there it appeared that land had been reserved for military purposes, and it was held that a subsequent act for the sale of lands in that territory did not operate upon this particular reserved tract. This only shows that, when land has been once reserved, congress will not be presumed to have intended a disposition of it in any other way, unless the intent is clearly expressed. But that does not meet the question in this case; for the act of congress of July 1, 1862, does not purport to grant the fee, but only a right of way. The reservation is not destroyed, but only a limited use placed upon a narrow strip. Now, that congress meant that that right of way should be through all lands over which it had control, is, I think, obvious for several reasons. I notice the principal: *First*, in the land grant made by this act congress made specific exceptions of lands to which any pre-emption, homestead, or other claim had attached, while the grant of the right of way is absolute and without exception. This distinction is recognized in the case of *Railroad Co.* v. *Baldwin*, 103 U. S. 426, in which, after noticing the limitations and exceptions upon the land grant, the court adds these words:

"But the grant of the right of way by the sixth section contains no reservations or exceptions. It is a present absolute grant, subject to no conditions except those necessarily implied; such as that the road shall be constructed and used for the purposes designed. Nor is there anything in the policy of the government with respect to the public lands which would call for any qualifications of the terms. Those lands would not be the less valuable for settlement by a road running through them. On the contrary, their value would be greatly enhanced thereby."

See, also, the case of *Railroad Co.* v. *U. S.*, 92 U. S. 733, where the same distinction between a land grant and a grant of a right of way is recognized. Further, I observe that the Union Pacific Railroad Company act contemplated a speedy construction of the road. The state of Nebraska was not then admitted to the Union, and there was no certainty when it would be. It is a matter of public history that a large part of the western portion of the then territory was unsurveyed. No one could say in advance where the sixteenth and thirty-sixth sections would lie. Can it be possible that congress, intending the speedy construction of the road, also contemplated that if, after construction, it should be found by survey that the line constructed ran through the sixteenth or thirty-sixth section, its right of way should cease, and it be deemed a trespasser thereon? Again, no provision is made for condemning the right of way over school sections, nor is it easily to be perceived how, under the statute then in force, proceedings could be had for such condemnation. Still, again, this right of way through school sections has been accepted without challenge for 20 years. This indicates the general understanding, and is significant. These considerations, among others, lead me to the conclusion that, beyond any doubt, congress intended by this act of

July 1, 1862, to grant a right of way through those lands which by surveys should be found to be sections 16 and 36, the school sections which it intended to give to the future state of Nebraska.

The demurrer to the answer will be sustained.

DUNDY, J. The foregoing is the opinion of BREWER, J., and I fully concur therein.