## Yazoo & M. V. R. Co. *v.* Sunflower County.

[87 South. 417, No. 21434.]

1. RAILROADS. *Effect of consolidation on right of way over school section stated.*

When the Yazoo & Mississippi Valley Railroad Company created by the Laws of 1882, chapter 541, page 838, consolidated with the Louisville, New Orleans & Texas Railroad Company, the effect was to create a new corporation subject to the existing laws of state; and under section 211 of the state Constitution of 1890 the fee in the sixteenth section lands which had not then passed could not thereafter become vested in a corporation or an individual; and a right of way laid out after such consolidation, which occurred in October, 1892, over sixteenth section lands, did not vest any right or title to said sixteenth section lands under section 7 of the Charter of the original Yazoo & Mississippi Valley Railroad Company.

2. PUBLIC LANDS. *Railroad lessee of school section holding over after expiration of lease estopped to set up adverse claim.*

Where a railroad company, after the Constitution of 1890 went into operation, leased from a board of supervisors a right of way for a term of years, and under such lease constructed its right of way

and track across the sixteenth section lands held in trust by the state, and continued in possession after the expiration of its lease without giving notice of its intention to claim title and without surrendering possession of the said right of way, it cannot under such facts set up an adverse claim to the county's reversion and assert a hostile title.

Appeal from chancery court of sunflower county.
Hon. E. N. Thomas, Chancellor.

Suit by Sunflower County against the Yazoo & Mississippi Valley Railroad Company. Decree for complainant, and defendant appeals. Affirmed.

*H. D. Minor, Charles N. Burch* and *Moody & Williams,* for appellants.

"Our position in this matter is that these lands are held in trust by the state for school purposes, and school purposes only, and that the legislature could not grant to the Yazoo & Mississippi Valley Railroad Company even if it had intended to do so by said charter." Brief for appellee, p. 4.

We wish briefly to answer this very clear statement of the appellee's contention. It will be borne in mind that we are not dealing with an attempted sale or grant of these school lands by some officer of the state, but with a grant made by the state itself through its sovereign legislature.

The legislature is subject to no limitation except such as may be found in the Constitution of the state in force in 1882 when the charter of appellant was granted. That the legislature had the power to make this grant is so clearly established by the case of *Jones* v. *Madison County,* 72 Miss. 777, that the only question is whether that case shall be overruled. The opinion in that case refers to prior cases and particularly *Hector* v. *Crisler,* 36 Miss. 681, and overrules those prior decisions declaring it to be the deliberate conclusion of the court that the legislature of the state did have the authority to convey these lands. The lease there before the court was for ninety-nine years

and the conclusion was announced that the lease was valid. Not only has *Jones* v. *Madison County* not been subsequently overruled, but the case has been referred to more than once and its correctness never doubted.

The same conclusion is announced in the case of *Cooper* v. *Roberts,* 18 How. (U. S.) 173; the brief of learned counsel speaks of the futility of citing decisions of the United States supreme court in reference to this case because such decisions are not controlling. It may be conceded, for the purpose of argument that the decisions of the Federal supreme court are not controlling, but certainly they remain valuable as precedents, being decisions by the highest judicial tribunal in the world..

It is claimed that the case of *Tynes* v. *Southern Pine Co.* (Miss.), 54 So. 885, is conclusive. That case has never been officially reported and the opinion is quite meagre. It has no application to the case at bar because the court was there dealing with the effect of the Constitution of 1868, section 6, article 8, which embraces merely lands now belonging to the state heretofore granted by the United States and land known as swamp lands.

As learned counsel points out at page five of his brief, it was decided in *Jones* v. *Madison County,* 72 Miss. 798, that the state's right in these sixteenth section lands does not arise from an Act of Congress, but from the act of cession by the state of Georgia in 1802. Therefore, these lands granted by the state of Georgia were not embraced in the provision of the Constitution of 1868 which the court had under consideration in the *Tynes case,* 54 So. 885. That case, therefore, does not directly or impliedly overrule the case of *Jones* v. *Madison County,* where this court squarely upheld the power of the state, through its legislature, to make a conveyance of these lands.

The quotation in appellee's brief, from 76 Miss. 495, that: "There never was in this state any legislative authority to sell in fee there lands, refers to authority from the legislature not in the legislature. For the court was

dealing with a sale by school trustees under claimed authority from the legislature.

We entirely agree that the state of Mississippi holds these sixteenth section lands under a sacred trust for the education of children of that community. But who is to determine whether this trust is properly administered or not. Has not that trust and its administration been vested entirely in the legislature of the state. Is argument necessary from us that the legislature may be trusted to administer this trust fairly and rightly? There is no court which has ever held that the judicial department may supervise and control the legislative department in matters of purely legislative administration. The fundamental basis of our Federal and all our state Constitutions is that there shall be three distinct departments of government, each independent of the other and each sovereign within its own field.

It is our view that it was not only the right, but the duty of the legislature in the administration of this trust, to do anything that would advance it. The legislature has the right in order to render a sixteenth section useful for any purpose, to dedicate public highways, across such as are reasonably necessary. Equally, the legislature has the right, in order to render the land more accessible, and therefore more useful and valuable, to grant an easement for a railroad over it. Such a grant is not an abuse of the trust, but an advancement of it. And even if we should concede the right of the court to supervise the action of the legislature, its action in thus developing this land should be approved.

*H. C. Mounger,* for appellee.

Our position in this matter is that these lands are held in trust by the state for school purposes, and school purposes only, and that the legislature could not grant to the Yazoo & Mississippi Valley Railroad Company, even if it had intended to do so by said charter.

This question has been authoritatively settled by the courts of this state by decisions too numerous to mention or to admit of controversy. *Lumber Company* v. *Harrison County,* 89 Miss. 571; *Jones* v. *Madison County,* 72 Miss. 798; *Gaines* v. *Nicholson,* 9 How. 365; *Sexton* v. *County,* 86 Miss. 385; *Jones* v. *Madison Co.,* 72 Miss. 792 (2 Par.), 18 So. 88.

We claim that the grant in the charter of the Yazoo & Mississippi Valley Railroad Company, if it was intended to grant any part of this sixteenth section, was absolutely void and beyond the power of the Mississippi legislature to make. All that could be done was to grant a seven years lease under the Acts of 1898, chapter 40, which has been brought forward into the Code of 1906, section 4700, except that the act as originally passed provided that lands in the sixteenth section should be leased for not longer than seven years, and it was under this provision that the board of supervisors granted the lease to the railroad company under which they entered. *Wright* v. *Lauerdale County,* 71 Miss. 804; *Robertson* v. *Monroe County,* 79 So. 185; *Weiler & Haas* v. *Monroe County,* 76 Miss. 492; *Morton* v. *Grenada Academy,* 8 Sm. & Marshall, 785.

In 32 Cyc., 868-869, it is stated that the Act of Congress intended the sixteenth section to be employed for the benefit of those who were to be educated in the townships. And in the case of the *State* v. *Cunningham,* 88 Wis. 81, it is held that the state could not set apart sixteenth section lands for a town park. 26 A. & E. Eng. L. (3 Ed.), 370.

We have argued this case so far as if there was an attempt on the part of the legislature to grant this land to the railroad and that the legislature did not have that power, even if it attempted to do so. But we further claim that there was no such intention on the part of the legislature and that it did not convey the sixteenth section lands. The charter itself grants a right of way for railroad purposes through state lands, Sec. 7, chapter 38. This did not embrace, *et seq.,* and could not embrace, and

was not intended to embrace, sixteenth section lands. The legislature had no such idea in view and the terms of this charter does not include sixteenth section lands and cannot be stretched to include sixteenth section lands.

In answer to the bill the defendant sets up the statute of limitations. The statute of limitations does not run against the state as is held in *Weiler & Haas* v. *Monroe County,* 76 Miss. 495. Having entered under a lease, they have no right to set up adverse possession or an outstanding title against their landlord, without first surrendering possession. If there was any statute of limitations applicable to the case it would be the twenty-five year statute of limitations, which makes twenty-five years adverse possession simply *prima-facie* evidence of a lease, section 4699, Code of 1906; and the evidence shows that the defendant fell down on the proof of adverse possession.

The evidence shows, record page 26, that the railroad was built in 1898. Twenty-five years added to this would bring us to the year 1923, and this suit was started in 1919. The Code of 1880, section 732, provides how school lands may be leased and directs that said lands be leased to the highest bidder for the term of ninety-nine years on petition of a majority of the resident heads of families. This shows how the legislature regarded the use of the school lands and for what purposes they were reserved.

In the case of *Rabb* v. *Supervisors of Washington County,* 62 Miss. 593, the court says: "The land in controversy does not belong to Washington county. Like all sixteenth section land or land in lieu thereof reserved by Act of Congress for the support of schools in this state, it is trust property for the benefit of schools in the township in which it is situate, and it can be devoted to no other use or purpose. *Morton* v. *Grenada Academy,* 8 S. & M. 773; *Bishop* v. *McDonald,* 27 Miss. 371.

As settling this case conclusively, we refer the court to the case of *Hynes* v. *Southern Pine Company* (Miss.), 54 So. 885, in which the question was as to the validity of a legislative grant to the Pearl River Improvement and

Navigation Company of land set apart for school purposes, in which said grant was held invalid and beyond the power of the legislature. In this case the court said: "In view of section 6, article 8 of the Constitution of Mississippi of 1868, which provides, that there shall be established a common school fund, which shall consist of the proceeds of the lands now belonging to the state, heretofore granted by the United States, and of the land known as swamp lands, except the swamp lands lying and situated on Pearl River, in the counties, of Hancock, Marion, Lawrence, Simpson and Copiah," etc. The Act of 1871 could not authorize the issuance of patents to the Pearl River Navigation Company of the land which is in controversy in this suit. The bill itself shows that the lands are not on Pearl river, and the language of the bill is even broader than this, in that the bill expressly states that the land is neither on nor near Pearl River. No act passed by the legislature, in view of the article of the constitution above referred to, could donate to anybody for any purposes, land situated as was this land. *Presly, Superintendent,* v. *Ellis, et al.,* 48 Miss. at bottom of page 578.

Counsel cites the case of *Cooper* v. *Roberts,* 18 Howard 173, which we claim is not applicable by reason of the fact that in the case first cited, *Jones* v. *Madison County,* 72 Miss. 798, the court says: "Beginning with the postulate that these lands belong to the United States, to be dealt with at its will, and therefore that the right of the inhabitants of the township sprang from a donation by Congress, the conclusion that the state had only such power as had been given by Congress would be a correct one. The mistake in the conclusion arises from the fact that the postulate is erroneous. The right of the inhabitants of the township to have the lands for school purposes arises, not from the Act of Congress but from the act of cession by the state of Georgia, 1802. The state, and not the United States, is the donor. The United States never had the shadow of a right to these lands, save as trustee for the inhabitants of the prospective states which the act

itself stipulated should be created." And our own decisions are the ones that govern these questions.

Further, in *Cooper* v. *Roberts,* the question was whether a lease made by the secretary of the sixteenth section could defeat the claim of the state for school lands. The question was which of two claimants had title, one claiming under the state of Michigan as school lands or the other party, claiming under the secretary of the treasury. It was held that this sixteenth section was school lands and the secretary of the treasury had no right to dispose of the same. The court winds up by saying something very significant: "Michigan has not complained of the sale, and retained, so far as the case shows, the price paid for it. Under these circumstances we must regard the patent as conclusive of the fact of a valid and regular sale on this issue." In this case the state is complainant and is complaining of the gift or grant and is not retaining any price paid for it.

In the case of *Board* v. *East Miss. Mills,* 18 So. 194, the question was simply as to the validity of a lease. It was not the case of a sale or a grant in fee simple. In the case which counsel quotes, *Robertson* v. *Monroe County.* 118 Miss. 536, the court says: "Has the state power to bring suit in this case. In the case of *Jones* v. *Madison County,* 72 Miss. 777, 17 So. 87, this court held as under the law that the state was the owner of the sixteenth section lands in trust for the inhabitants of the several townships, the state is therefore a trustee, and the management of the sixteenth section lands for the purpose of carrying out the grant of the state of Georgia is a trust over which the state, as trustee, has control, and the subject of trust is a familiar ground of equity jurisdiction.

"We think in this case that the state had the right to bring the suit as trustee, and that the equity court had jurisdiction over the subject-matter, because it was a trust." Section 211 of the Constitution of 1890, was merely declaratory of what the law already was and was intended to provide that the true condition of the title to the

sixteenth section lands in this state should be looked into and cleared up.

In conclusion, we would recapitulate that this sixteenth section was donated to the state of Mississippi by the state of Georgia in trust for school purposes, that it could be used no other way and could not be diverted from this purpose; that the legislature could not by a grant to the railroad, give this land to the railroad for railroad purposes; that the legislature did not so intend by the grant, because the terms of the grant did not and could not include school lands; that after this grant the railroad did not rely upon it, but complied with the then existing law on the subject and leased said land for a term of seven years; that it cannot now come in under these circumstances and set up an outstanding title without surrendering possession to the county; that the lease has long since expired and that the county is entitled to the possession of said lands.

In regard to the question of the very moderate sum which the county was allowed for rents, we would refer the court to the testimony of W. P. Sanders, Record page 17 et seq., and the testimony of J. S. Watson, Record page 25 et seq.

We insist that there was a breach of trust on the part of the legislature in donating this land to the railroad if in fact it did donate the land to the railroad, and that the judgment should be affirmed.

Ethridge, J., delivered the opinion of the court.

Sunflower county brought a suit to cancel a claim of the appellant to section 16, township 23 north, range 3 west, alleging that said lands were school lands donated by the state of Georgia for the benefit of the inhabitants of the several townships, and, when Mississippi was admitted as a state, that the title and control of the section vested in the state in trust for the inhabitants of the townships for the support of schools within the township; that the railroad company was in possession of a strip of land one hun-

dred feet wide through the said section, being fifty feet on each side of its track extending entirely through the section in a northerly and southerly direction, and that the railroad company claims title in fee simple to the said land, and that such possession and claim casts a cloud upon the title to said land, and prayed for the rents on said strip, it being alleged that the railroad company had been in possession for several years, and for the cancellation of the title and for an accounting.

The railroad company filed an answer denying the right of cancellation and asserting title, as an easement over said land, by reason of a grant contained in the charter granted by the legislature on February 17, 1882, to the Yazoo & Mississippi Valley Railroad Company. It also pleaded that it had been in possession of the said land more than twenty-five years prior to the filing of the suit and pleaded the statute of limitations in support of its right and in bar of the county's right; and asserts that by reason of the act of the legislature of 1882, Laws of Mississippi of 1882, section 7, p. 845, it was granted a title to the land in controversy.

The complainant, the county, introduced in evidence an order of the board of supervisors directing the suit to be brought and also a minute of the board of supervisors of said county at the July 1898 term, in the following words:

"Upon the application of the Yazoo & Mississippi Valley Railroad Company for a right of way one hundred feet wide, across section 16, township 23, range 3 west, in Sunflower county, Miss., and the board having considered the same, it is therefore ordered that the said application be and the same is hereby granted, and the president of this board is hereby authorized and directed to execute to said railroad a deed conveying to said railroad a right of way across said land one hundred feet wide, for a term of seven years from this date, but no longer."

It also introduced a lease dated July 4, 1898, signed by John R. Baird, president of the board of supervisors, which reads as follows:

"In consideration of one dollar in hand paid and the benefits of having a railroad built across the hereinafter described land, within one year from date, I convey and warrant to the Yazoo & Mississippi Valley Railroad Company, its successors and assigns, for a term of seven years from this date, for the purpose of a railroad right of way, the land described as follows:

"A strip of land one hundred feet wide (100), being fifty (50) feet on each side of the center line of the railroad as surveyed and located across the land in said county and state, to wit:

"Section 16, township 23, range 3 west, Sunflower county, Miss., hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state in or to any part of the land above conveyed and all rights of dower therein."

The railroad track across the land in question was constructed in 1898, and after the expiration of the seven years stipulated for in the lease the railroad company continued in possession without paying further rents or securing further rights, and afterwards set up claim as presented in the present suit.

The present Yazoo & Mississippi Valley Railroad Company came into being as a corporation on the 24th day of October, 1892, by the consolidation of the Louisville, New Orleans & Texas Railroad Company and the Yazoo & Mississippi Valley Railroad Company, which latter company was incorporated by the Act of 1882 herein referred to.

It was held by this court in the suit of *Adams, State Revenue Agent*, v. *Y. & M. V. Railroad Co.*, 77 Miss. 194, 24 So. 200, 60 L. R. A. 33, that the effect of the consolidation of the two railroad companies was to create a new corporation whose powers and rights were measured by the articles of consolidation and the laws in force at the time of the consolidation. In the beginning of the opinion in that case the court said:

"The question which lies at the foundation of this case is this: Conceding for argument's sake that the L., N. O.

& T. R. R. Co. had an exemption from taxation, did the consolidation of that railroad with the Yazoo & Mississippi Valley Railroad Company on October 24, 1892, create a new corporation, as of that date, and thus result in the cutting off of said exemption by section 180 of the Constitution of 1890? If this question be answered in the affirmative, then, obviously, the contention of the state must prevail throughout, without regard to any other questions in the case. The power to consolidate must be granted by the state, and permission to consolidate, so granted, is not a contract, but a mere license. 6 Am. & Eng. Enc. L. (2 Ed.), p. 802; *Pearsall* v. *G. N. Ry. Co.,* 161 U. S. 667; *Louisville, etc., Railroad Co.* v. *Kentucky,* 161 U. S. 695; *Keokuk, etc., Railroad Co.* v. *Missouri,* 152 U. S. 312. . .

"Let us inquire, then, what the effect of this consolidation was; and, first, what railroads entered into this consolidation? The L., N. O. & T. R. R. Co. and the Y. & M. V. R. R. Co. What was the L., N. O. & T. R. R. Co.? It is described in the 'Articles of Consolidation' as the 'Louisville, New Orleans & Texas Railway Company, a corporation of the states of Tennessee, Mississippi, and Louisiana of the first part;' and it is further expressly declared in said articles that the consolidation is effected 'under and by virtue of the charters of the respective states of Tennessee, Mississippi, and Louisiana, in such case made and provided,' etc. The two ends of this railroad are in Louisiana and Tennessee. Now, what are the laws touching consolidation in these states, 'in such case made and provided?' Of course we deal here exclusively with the Mississippi corporation under our laws; but the laws of Louisiana and Tennessee are expressly referred to as having been held in mind in effecting this consolidation, and they will materially aid us in solving this question. The road, with all its property, was a unit in the three states. If the effect of the consolidation in Tennessee and Louisiana was known necessarily to be the creation of a new corporation, it hardly comports with reason to suppose that any different consolidation would have been sought at the

hands of the Mississippi legislature or granted by it, if sought; and so we shall find it to be."

The court then proceeded in an elaborate opinion to consider the provisions of the articles of consolidation and the law bearing upon the consolidation, and reached the conclusion that the articles of consolidation created a new charter subject to the provisions of the Constitution of 1890 and other laws of the state in force at the time of the consolidation.

An appeal was taken from the judgment of this court to the United States supreme court in which it was contended that the construction placed upon the charters of the railroad companies, to the effect that the "Articles of Consolidation" constituted a new corporation subject to existing laws, was an impairment of the obligations of the contract within the prohibition of the federal Constitution, and that court entertained jurisdiction, and upheld the view of the Mississippi supreme court that the effect of the consolidation was to create a new corporation. In discussing this feature of the case the United States supreme court said:

"At the foundation of the right to a reversal of this case is the question whether, conceding the validity of the exemption or commutation provision contained in the twenty-first section of the Mobile Company's charter of July 21, 1870, such exemption enured to the plaintiffs in error under their successive consolidations. It will be borne in mind that the existing Constitution of Mississippi was adopted November 1, 1890; that the present Yazoo Company was formed October 24, 1892 (nearly two years after the adoption of the Constitution), by the consolidation of the original Yazoo Company with the Louisville Company. By the act of August 8, 1870, the exemption contained in the twenty-first section of the Mobile charter was extended to the Memphis & Vicksburg Railroad, which was chartered the same day. This charter gave it power to consolidate its stock, property, and franchise with any other road upon such terms as might be consistent with the powers

conferred upon the company. Twelve years thereafter, March 9, 1882, the Baton Rouge Company was incorporated with power to consolidate with any other company, and on March 3, 1882, the Memphis & Vicksburg Company was also authorized to consolidate. The same power had already been extended, February 17, 1882, to the Yazoo Company.

"It is unnecessary to discuss the terms of the first consolidation of August 12, 1884, between the Tennessee Southern, the Memphis Company, the Baton Rouge Company, and the New Orleans Company, forming the Louisville, New Orleans & Texas Company, since this was made prior to the adoption of the New Constitution of 1890. We are specially concerned with the articles of consolidation between the Louisville Company so organized, and the Yazoo Company, which were adopted October 24, 1892, and subsequent to the New Constitution. The question in that connection is whether such consolidation created a new corporation, or, in the language of section 180 of the Constitution of 1890, whether it was a 'grant of corporate franchises,' in which case, by the express language of that section, such new corporation became subject to the provision of the new Constitution. In their articles of consolidation these companies agreed 'to and with each other, to unite, merge, and consolidate their several capital stocks, corporate rights, franchises, immunities, and privileges, and properties of every kind, real, personal. and mixed.' The first article provided that 'such consolidation shall be effected by uniting or merging the stock, property, and franchises of the party of the first part (the Louisville Company) with and into the stock, property. and franchises of the said the Yazoo & Mississippi Valley Railroad Company, without disturbing the corporate existence of the last-named company, or the formation of any new, distinct corporation, unless such result shall be necessary to give legal effect to this agreement; but, whatever may be the legal consequence of the consolidation herein provided for, this agreement is to stand and be effective.'

This article was evidently drawn in view of the decisions of this court upon the subject of merger and consolidation, and evinces a desire to avoid the legal results following from a consolidation of the two constituent companies into a new corporation, but, at the same time, expresses a doubt whether the agreement would not after all be construed to create a new corporation. These doubts were unquestionably well founded, and, if the effect of the agreement be in law the creation of a new corporation, the expression of a wish that it should not be so construed is of course entitled to no weight. The final clause, that in any event the agreement shall stand and be effective, shows that effect should be given to all its stipulations, whatever be its legal consequences.

"Subsequent articles provided that the corporate name should be the Yazoo & Mississippi Valley Railway Company; that the capital stock should be fifteen million dollars; that the stockholders of either of the constituent companies should 'have all the rights of a stockholder of the consolidated company, as fully as if new shares of the consolidated company had been issued and exchanged therefor; and, in case the consolidated company shall determine to issue new shares, such shares shall be exchangeable at par for the new outstanding shares of each of the constituent companies;' that all the rights, powers, privileges, immunities, and franchises of the constituent companies should pass to the consolidated company, which should be managed by a board of directors, whose names, for the purpose of the organization, were given.

"Reading this agreement in connection with the charters of the several companies, and especially with that of the Memphis & Vicksburg Railroad Company of March 3, 1882, providing that 'all of the companies so consolidating shall be merged into and become one company, and the company so formed by such consolidation shall be deemed and held to be a corporation created by the laws of this state,' it is impossible to escape the conclusion that a new corporation was created with a capital stock of fifteen million

dollars, and that the stockholders of the constituent companies were to become stockholders of the new company, share for share, 'as fully as if new shares of the consolidated company had been issued and exchanged therefor.' Some question was made in the state courts whether the shares were actually issued in the new company. But the supreme court having found that they were, we accept that finding as conclusive. Power was expressly given to issue new shares, and the usual course of business would justify us in inferring that that was the method adopted. A new name was taken, which was none the less a new one by reason of the fact that it was the name of one of the constituent companies.

"It cannot be doubted that under this agreement that it was contemplated that the constituent companies should go out of existence, and that their officers should resign their trusts in favor of the officers of the new company; that their boards of directors should be supplanted by another board, the names of whose members were contained in the agreement; that the stock of the constituent companies should be surrendered and new stock taken therefor, or, in lieu of that, that the old stock should be recognized as the stock of the new company; that the road should be operated by men holding their commissions from the new company, and that the entire administration of the functions of the constituent companies should be surrendered to the new corporation. In short, nothing was left of the constituent companies but the memory of their existence—the mere shadow of a name. But the new company which took its place suddenly sprang into life with a new corps of officers and a full equipment for the successful operation of the road." 180 U. S. 16, 21 Sup. Ct. 245, 45 L. Ed. 405.

It follows from these decisions that the question now presented for consideration is whether section 7, chapter 541, Laws of 1882, granted to the railroad company *in presenti* full title to the land involved here, or whether under the provisions of that section the title only passed

from the state to the railroad company when the right of way was laid out, located, or construed over the land. The pertinent part of this section reads as follows:

"That the right of way is hereby granted said company to pass in and through the state of Mississippi, with said railroads, branches, spurs and laterals aforesaid, and to enter upon and use all lands, rocks, timber, earth, sand, gravel, water or other materials, which may be found on the routes selected, and which may belong to the state of Mississippi, and be convenient or necessary for the use of said railroads; and wherever said railroads or the branches, spurs or laterals aforesaid are located, over any lands belonging to this state, the title in fee simple, to one hundred feet on each side of the center of said railroad track or tracks shall vest in said company, its successors and assigns," etc.

It will be noted that this language provides that the title in fee simple is to vest wherever said railroad or the branches, spurs, or laterals aforesaid are located over any lands belonging to this state. The act does not describe any particular lands, nor does it give any description of the lands which are granted, but merely undertakes to grant a right of way through any lands belonging to the state, and to grant the right to use the material upon such land for the use of the railroad on the route selected by the railroad company over lands which belonged to the state of Mississippi. Necessarily the right of way had to be located in order for the title to vest in the grantee under the peculiar phraseology of this act, otherwise the state would have granted to this one railroad company title in fee to any and all public land which the state may have owned, or else the grant would have been void for uncertainty of description.

We think it was the purpose of the legislature to grant the right of way only when the right of way was located and until that was done the railroad company did not acquire any title to the land.

Inasmuch as the right of way was not located prior to the consolidation (which consolidation created a new corporation subject to all the laws in force at the time of the consolidation), the title did not pass because two provisions of the state Constitution operated to prohibit a grant of lands belonging to the state at that time. Section 211 of the Constitution of Mississippi of 1890 prohibits the sale of these particular lands. This section in full reads as follows:

"The legislature shall enact such laws as may be necessary to ascertain the true condition of the title to the sixteenth section lands in this state, or lands granted in lieu thereof, in the Choctaw purchase, and shall provide that the sixteenth section lands reserved for the support of township schools shall not be sold, nor shall they be leased for a longer term than ten years for a gross sum; but the legislature may provide for the lease of any of said lands for a term not exceeding twenty-five years for a ground rental, payable annually; and, in case of uncleared lands, may lease them for such short term as may be deemed proper in consideration of the improvement thereof, with right thereafter to lease for a term or to hold on payment of ground rent."

Section 95 of the Constitution of 1890 reads as follows:

"Lands belonging to, or under the control of the state, shall never be donated, directly or indirectly, to private corporations or individuals, or to railroad companies. Nor shall such land be sold to corporations or associations for a less price than that for which it is subject to sale to individuals. This, however, shall not prevent the legislature from granting a right of way, not exceeding one hundred feet in width, as a mere easement, to railroads across state land, and the legislature shall never dispose of the land covered by said right of way so long as such easement exists."

So that the legislature at the time could not have conferred upon a railroad corporation a grant in fee simple

of the right of way over the land. It is unnecessary here to decide whether the act of 1882 would apply to sixteenth section lands held in trust, or whether it would be limited to lands owned outright.

The railroad company at the time it entered this section of land did not understand the laws to be what it now contends it is, because it applied to the board of supervisors for a right of way and, in consideration for a lease for seven years, built its tracks through the said section. Under the law in force at that time all that it could acquire was a leasehold right of way for a definite limited term, and upon this lease it entered the land and laid out its right of way and constructed its roadbed and track. Under this lease the county could not disturb it or prevent the construction of a track or take any proceeding to cause it to be removed until the expiration of the term of the lease.

It is contended by the appellant that it is not estopped from setting up title in contravention of this lease under the decision of *Jones* v. *Madison County,* 72 Miss. 777, 18 So. 87. The court in discussing this principle in that case said:

"The principle is that, when the lessee has paid for the term, he owes no duty to his landlord, except not to dispute his title to the reversion. The term then becomes the property of the tenant, and, in defense of that, he may fight the landlord 'tooth and nail,' as he may a stranger. He may use any weapon he may find in his arsenal in defense of his term. If the statute of limitations is available, he may shelter behind that; if it is not, he may resort to any defense which does not controvert the reversionary right of the landlord nor violate the terms of his own contract. It is true the statute of limitations, as against the county's title, cannot now be invoked; but when the law was that it could be, its effect was that the defendant had acquired that title by adverse possession. Title of the county derived from the statute is not pleaded by the defendant. He shows that the county had

no title, but that it was in the heirs of Hill, and that this title he has acquired by limitation."

In this case the county is not seeking to repudiate the lease, and it cannot repudiate the lease because it had the power to make the lease and acting upon the lease the railroad company constructed its property across the land. Having continued in possession after its lease expired, it is subject to the claim by the county for the reasonable value for the use of the right of way for the years sub-sequent to the expiration of the lease, and the chancellor's finding as to the value of the use of the right of way is supported by the evidence, and his judgment will be affirmed.

*Affirmed.*