WASHINGTON COUNTY *v.* BOARD OF MISSISSIPPI LEVEE COM'RS.

(Division A.   Oct. 15, 1934.)

[156 So. 872.   No. 31236.]

**Ben Wilkes**, of Greenville, and **D. H. Waits**, of Leland, for appellant.

**H. P. Farish;** and **Ernest Kellner, Jr.,** both of Greenville, for appellee.

Argued orally by **Ben Wilkes**, and **D. H. Waits**, for appellant, and by **H. P. Farish** and **Ernest Kellner, Jr.**, for appellee.

**Cook, J.**, delivered the opinion of the court.

Prior to September 5, 1933, the board of Mississippi levee commissioners, deeming it necessary to make certain changes in the location of the levee along the Mississippi river in Washington county, Mississippi, condemned certain lands for that purpose, and appropriated certain sixteenth section lands, upon which the levee was actually constructed, and damaged or destroyed the value of other sixteenth section lands which were thrown outside the levee, for all of which no compensation was paid. On or before that date, at the instance of Washington county, the levee damage commissioners assembled and made awards to the county of damages for all of the sixteenth section land so taken, or damaged by being thrown outside the levee. From said awards, the levee board appealed to the chancery court, on the ground, among others, that it was authorized to enter upon, take, use, and appropriate the property, and was not required to compensate the county therefor. The interests of the respective lessees of these sixteenth section lands have been condemned and paid for, and their interests are in no way involved in this cause.

The county answered the appeal of the levee board by denying that the board was authorized to enter upon, take, use, and appropriate the property without compensating the county therefor, and alleged that said board entered upon and took the property without authority of law, in a proceeding to which the county was not a party, and that the awards made to the county by the levee damage commissioners were inadequate to compensate the county for the lands taken or damaged or destroyed.

At the conclusion of the evidence in the trial of this cause in the chancery court, the levee board requested a directed verdict on the grounds, among others:

"1. That under the laws of the state of Mississippi, the Board of Mississippi Levee Commissioners was authorized to enter upon and use the land involved in this suit for levee purposes, and was not required to pay the complainant, Washington county, either for the land taken, or damages to the land thrown out.

"2. That the court is without jurisdiction in this case for the reason that it appears from the proof that the taking and throwing out of the lands involved in this suit occurred more than one year prior to the time the levee damage commissioners of Washington county were summoned to assess the damages for said lands."

The trial court held that there was no merit in the first ground of the motion as stated above, but sustained it on the second ground, and from the decree entered in favor of the levee board, the county prosecuted this appeal.

The appellant contends that the provision of the act creating the board of Mississippi levee commissioners, which limits rights of action founded on any claim for compensation for any land or material taken by such commissioners, or for damages that may be claimed or sustained in consequence thereof, to one year next after

the cause of such action shall have accrued, is unconstitutional, and that the court below was, therefore, in error in sustaining the appellee's motion for a directed verdict. In the case of Board of Levee Commissioners v. Dancy, 65 Miss. 335, 3 So. 568, a similar provision of the act creating the board of levee commissioners for the Yazoo-Mississippi Delta was held to be unconstitutional (Laws 1884, chapter 168), but it will not be necessary for us to pass upon the constitutionality of the limitation found in section 12 of the act creating the board of Mississippi levee commissioners, for the reason that we have reached the conclusion that, regardless of the constitutionality of this provision, the decree of the court below was correct.

In the case of Street v. Columbus, 75 Miss. 822, 23 So. 773, it was held that the state held the title of sixteenth section lands in trust, with absolute control over them, and without any limitation of its power other than the sacred obligation imposed on its public faith. Cooper v. Roberts, 18 How. 181, 15 L. Ed. 338. In the exercise of its plenary power over these sixteenth section lands, some of them were sold to private persons, and the title vested in them in fee, but section 211 of the Constitution of 1890 prohibited the sale of these lands. In the same Constitution, however, by section 227, the maintenance of a levee system is mandatorily required, and by section 228 thereof the two then existing levee districts, the Yazoo-Mississippi Delta levee district, and the Mississippi levee district, were recognized and continued in existence as then organized, with the power granted to the Legislature to add thereto any other alluvial lands in the state. Section 233 of the Constitution of 1890 granted these levee districts authority and full power to appropriate any private property in their respective districts for the purpose of constructing, maintaining, and repairing the levees therein, and further made provision

for the assessment of proper compensation for private property so taken, or for any damage sustained in consequence of such taking. In this Constitution no provision is made for compensation to any agency of the state for public lands taken or appropriated to the public use of building levees.

Pursuant to the constitutional grant of authority to appropriate private property for levee purposes, and in the exercise of its power and authority over public lands, the Legislature subsequently enacted chapter 92, Laws of 1904, providing that the "board of levee commissioners is hereby authorized to enter upon, take, use and appropriate any property in said levee district, for the purpose of constructing, maintaining and repairing its said levee."

It appears to be well settled that, in the absence of constitutional prohibition, the Legislature may authorize the taking of property devoted to a public use for a different public use, and a grant of the power of eminent domain to a municipal corporation for the erection of a particular public improvement will authorize the taking of public property, where from the nature of the improvement authorized it is impossible or impracticable to construct the same without encroaching on such property. 10 R. C. L. 198. The question then arises as to whether or not the prohibition in the Constitution of 1890 of the sale of sixteenth section lands takes from the Legislature its power to appropriate such lands to public purposes other than that for which they are held in trust, either with or without compensation to the township school funds.

The makers of the Constitution of 1890, who wrote into it the prohibition against the sale of these school lands, inserted into the same Constitution a mandatory provision that a system of levees should be maintained for the reclamation and preservation of that vast body of fertile, alluvial lands lying along the Mississippi river in

what is known as the Yazoo-Mississippi Delta, which in-cludes within this vast acreage many sixteenth sections. Prior to the construction of the levees along the Missis-sippi river, the large acreage lying along this river, being the most fertile lands in this state, and among the most fertile to be found anywhere in the world, was sub-ject to annual overflows from the Mississippi river, and, consequently, most of it was uninhabited, and all of it was of comparative little value. It consisted largely of lakes, bayous, and cane brakes, and much of it was practically a wilderness, in which diseases incident to such sur-roundings were prevalent. Long prior to the adoption of the Constitution of 1890, it was conceived by the Legis-lature that this vast area, comprising a large percentage of the acreage of the entire state, could be reclaimed by a system of levees along the Mississippi river which would prevent the overflow waters of this river from spreading over it. The levees constructed in pursuance of legisla-tive authority then granted have succeeded probably be-yond the fondest dreams of the Legislature and the engi-neers who inaugurated this great public improvement, and to-day this vast area, extending from Vicksburg on the south to near the Tennessee line on the north, a dis-tance of more than two hundred miles, is now thickly populated, and is one of the most beautiful and fertile farming sections in our entire country. It consists of both small and large plantations, which produce a grade of cotton superior to any grown elsewhere in the cotton belt of the United States, as well as other profitable farm products. It is not surpassed by any section in sanitary and health conditions, and is dotted with properous towns and cities, with all necessary railroads and paved high-ways covering the entire area, and consolidated and high schools available to all the inhabitants.

By this levee system, a large number of sixteenths sections lying in this Delta have been reclaimed and brought from a state of practical worthlessness to one of

great value, and the makers of the Constitution knew that the value of these school lands, as well as the vast acreage comprising the Delta, could be preserved only by the maintenance and continued enlargement and improvement of the levee system, and, consequently, they required that the system should be maintained, and made such provisions as were necessary to enable the Legislature to accomplish the required and highly beneficial purpose.

They also knew, as all men must have known, that this vast levee system extending for a distance of approximately two hundred miles, and designed to hold back the flood waters of this great river, must be constructed according to well-ordered and carefully designed plans, which must be complete and co-ordinated for the entire system. It was manifest that, in the preparation and consummation of the plans for this gigantic engineering enterprise, which called for engineering skill and ability of the highest order, the line of these levees must in all probability cross some of the sixteenth section lands which are dotted over the area to be traversed, and that certainly other sixteenth section lands would be thrown partially or wholly outside the levee, or, in other words, between the levee and the river, thereby practically destroying what little value such sections had in their natural state.

In viewing of this absolute necessity of appropriating or damaging some of these school lands in order to effectively carry out the constitutional mandate, the right to appropriate so much of them as might be necessary for the accomplishment of the greater and paramount benefit to all the people in the district, as well as the entire state, must be necessarily implied from the mandate to construct and maintain an effective system of levees. We conclude, therefore, that the decree of the court below should be affirmed.

Affirmed.