WILLMUT GAS & OIL Co., et al. *v.* COVINGTON COUNTY.

No. 38859 57 Adv. S. 37 71 So. 2d 184

March 15, 1954

*Currie & Currie; Hannah, Simrall & Aultman,* Hattiesburg; *Green, Green & Cheney,* Jackson, for appellant Willmut Gas & Oil Company.

*Avery & Putnam,* Jackson; *Brunini, Everett, Grantham & Quin,* Vicksburg; *W. O. Crain,* Shreveport, Louisiana, for appellant United Gas Pipe Line Company.

*Hugh M. McIntosh, John K. Keyes,* Collins, for appellee.

*Wright, Overstreet & Kuykendall; Wells, Thomas & Wells,* Jackson; *Eaton & Cottrell,* Gulfport, Amici Curiae.

ARRINGTON, J.

This suit was brought in the Chancery Court of Covington County, by Covington County, appellee herein, against appellants Willmut Gas and Oil Company, hereinafter referred to as Willmut, and United Gas Pipeline Company, hereinafter referred to as United, and also against other defendants who have not appealed. The purpose of the action was to cancel certain alleged clouds on the title to sixteenth section school lands asserted by the defendants, to confirm the State's title as trustee, and to recover damages against Willmut and United resulting from the construction of a natural gas pipeline across the sixteenth section, and a reasonable rental for the use of the right-of-way, and to enjoin its further use.

The parties stipulated the relevant facts. For purposes of presenting the issues involved, they may be summarized as follows: The title to the sixteenth section in question, located in Covington County, Mississippi, is vested

in the State of Mississippi as trustee for the use and benefit of the schools in the township. None of it has been sold and no one has established title to this section under the twenty-five year adverse possession statute, Code Sec. 6596. On March 3, 1846, the county, through the proper authorities, leased the entire section to Malachia Odom for a term of 99 years. This lease remained in effect until March 3, 1945, its expiration date.

In 1932 Public Service Corporation of Mississippi, hereinafter referred to as Public Service, constructed an eight-inch pipeline for the transmission and distribution of natural gas as a public utility across this section. This pipeline has been used continuously until the present date as a facility of a public utility distributing natural gas. Public Service purchased right-of-way deeds from all persons who were transferees and assignees of Odom under the 99-year lease. Since 1932 natural gas has been continuously transmitted through this pipeline and is available to municipalities in the adjoining area. From 1932 until February 20, 1934, Public Service continued to operate this gas pipeline, and appellee in this suit is not claiming any damages for Public Service's actions during this period. Public Service was adjudicated a bankrupt, and on February 20, 1934 its assets were sold to appellant, Willmut. At that time Willmut took possession of this gas pipeline across the sixteenth section in question, and used and operated it for the stated purposes until August 20, 1943, when Willmut conveyed it to United. Since that date, United has continued to use and operate it.

It was stipulated that "no trees thereon have been cut, clearing having been completed by Public Service." Neither the state nor appellee county has received any cash consideration for such right-of-way. The only consideration paid was that paid by Public Service to the persons claiming as assignees from the 99-year lessee, Odom. These persons executed right-of-way deeds to Public

Service. United owns a certificate of public convenience and necessity issued by the Federal Power Commission. When the 99-year lease expired on March 3, 1945, Covington County granted agricultural leases for 15-year periods to various parties who were made defendants to this bill; none of them filed answers, and subsequently pro confesso decrees were taken against them.

It was further stipulated that solely for the purpose of this suit, the sum of $30 was a reasonable amount for the use of this sixteenth section for pipeline purposes for each year, and a proportionate amount for each fractional year, but that the board of supervisors of the county has not made any order as to the amount of the rental. In Covington County, the pipeline crosses five of the forty-acre governmental units in this sixteenth section. None of the land is used for any purpose except for agriculture, and ''the reasonable cost per annum for a right-of-way across the said land is $10 per forty, or fractional forty, if Covington County has the lawful authority to exact any cash compensation whatsoever.'' Public Service, Willmut, and United have each regularly paid annual ad valorem assessments on the pipeline, except where the same was exempt from taxation, which taxes have been collected by the county. When Public Service constructed the pipeline, no demand for rental was made by appellee or by the State, nor was any demand made upon Willmut or United until October 11, 1951, when this suit was filed. During this period, Public Service, Willmut and United have in good faith claimed a right-of-way from the state across these lands under the conveyances from assignees of the 99-year lessee, and under Miss. Code 1942, Sec. 2780, which is discussed subsequently. It was stipulated that the case could be tried on the pleadings, exhibits, and the agreed statement of facts. No testimony was taken.

The final decree confirmed the title of the State as trustee for the township schools to the sixteenth section,

as against all of the defendants, subject to designated unexpired leasehold interests in the section. The decree awarded the county a judgment for $285 against Willmut for the use of the land for right-of-way purposes for a natural gas pipeline for the period from February 20, 1934, to August 20, 1943, and a judgment against United for $275 for the use of this section for the same purposes for the period from August 20, 1943, to date. The trial court further enjoined United "from in anywise using any portion of the said sixteenth section for right-of-way for the operation and maintenance" of its pipeline now located over and across these lands, and enjoined the operation and maintenance of the pipeline by United over the premises. It allowed United and Willmut an appeal with supersedeas.

Appellants contend that the chancery court erred in its final decree because Code of 1942, Sec. 2780, was a self-executing conveyance to them and to their predecessor Public Service of a right-of-way across this sixteenth section without the requirement of any compensation; and that the consideration for which the State by Sec. 2780 made this grant of a right-of-way was that appellants made available to the State and its citizens natural gas and its accompanying benefits. Code Sec. 2780, as amended by Miss. Laws of 1950, Chap. 358, provides:

"All companies, associations of persons, municipalities, associations of municipalities, or natural gas districts, incorporated or organized for the purpose of building or constructing pipe lines and appliances for the conveying and distribution of oil and gas or for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, *and to build and construct the said pipe lines* and appliances *along or across* highways, waters, railroads, canals, and *public lands,* above or below grounds, but not in a manner to be dangerous to persons or prop-

erty, nor to interfere with the common use of such roads, waters, railroads, canals and public lands. The board of supervisors of any county through which any such line may pass, shall have the power to regulate, within their respective limits, the manner in which such lines and appliances shall be constructed and maintained on and above the highways and bridges of the county and *all such companies,* associations of persons, municipalities, associations of municipalities or natural gas districts *shall be responsible in damages for any injury caused by such construction or use thereof.*" (Emphasis added.)

 This statute granted to Public Service and to appellants the right to build and construct a pipeline **across** "public lands." And "public lands" includes sixteenth section school lands. Chap. 11, Title 17, Vol. 3 of the 1942 Code, is entitled "public lands." And Sec. 4070 in effect includes sixteenth section lands in the category of public lands. We think that the legislature in the use of the phrase "public lands" in this statute intended the same to include sixteenth section lands. Compare U. S. v. Bisel, 19 Pac. 251 (Mont. 1888); Union Pacific Ry. Co. v. Douglas Co., 31 Fed. 540 (U. S. C. C., Neb. 1887); State v. Cumberland Tel. & Tel. Co., 27 So. 795 (La. 1899).

 The purpose which the legislature evidently had in granting to public utilities such as appellants the right to construct its pipelines across sixteenth section lands is consistent with other analogous legislative grants. Code Sec. 5525 provides that all associations and corporations formed under the Rural Electrification Act are authorized to construct electric lines over unimproved sixteenth sections, and that this shall be without payment to the State for that easement. By Code Secs. 7723 and 7737 railroads are given the power to enter upon, acquire, and use a right-of-way across any lands belonging to the State. Code Sec. 7837 provides that all telephone and telegraph companies authorized

to erect their posts and lines across any of the public highways, streets, or waters, "and also through any of the public lands." Hodges, Tax Collector of City of Meridian v. Western Union Telegraph Company, 72 Miss. 910, 18 So. 84 (1895), held that a telegraph company could use the city streets without cash compensation being paid. City of Canton v. Canton Cotton Warehouse Company, 84 Miss. 268, 36 So. 266 (1904), applied the above cited statute to a railroad company crossing city streets. The Meridian case held that such a right is a revocable license and a mere permission to enter the streets and use them. Manifestly, in granting to public utilities the right to enter and cross public lands including sixteenth sections, the legislature, in enacting Sec. 2780, had in mind these other somewhat similar statutes dealing with other types of public utilities.

Gandy v. Public Service Corporation of Miss., 163 Miss. 187, 140 So. 687 (1932), held that appellants' predecessor in title, the appellee in that case, was such a corporation as was empowered to exercise the right of eminent domain granted it by Sec. 2780 over privately owned lands. It further held that "the plain purpose of the statute is to encourage such enterprises"; and that the supplying of gas to the public for heating and power purposes is such a public convenience as justified the granting to Public Service of the right of eminent domain. The court said that the statute as enacted at that time erroneously omitted the conjunctive "and" before the phrase "to build and construct" and that it granted the right to condemn private property. Inferentially Gandy indicated, as we now hold, that the statute made a grant of the right to cross public lands, subject to certain restrictions. Miss. Power Co. v. Sellers, 160 Miss. 512, 133 So. 594 (1931), held that Code of 1930, Sec. 1506, being Code of 1942, Sec. 2778, applied to Mississippi Power Company, and that which is presently Sec. 2780 had no application, ". . . but

if it had, this record does not disclose that the board of supervisors and the power company had not lawfully discharged their duties with respect thereto, and under well-known rules we would assume that the law had been complied with, and the board of supervisors had designated and regulated the poles and the manner of erecting these poles and wires, . . ."

Hence Sec. 2780 grants to the designated public utilities a right to cross public lands, including sixteenth sections. However, it also imposes certain important restrictions and limitations upon that right. The construction of the pipeline must not be in a manner dangerous to persons or property, nor such as to interfere with the common use of public lands. And the last sentence of that section provides: "The board of supervisors of any county through which any such line may pass, shall have the power to regulate, within their respective limits, the manner in which such lines and appliances shall be constructed and maintained on and above the highways and bridges of the county and all such companies, associations of persons, municipalities, associations of municipalities or natural gas districts shall be responsible in damages for any injury caused by such construction or use thereof."

The first clause of this provision gives the board of supervisors the power and the duty to regulate the manner in which the pipeline shall be constructed and maintained, and in this respect the above quoted statement from Miss. Power Company v. Sellers is relevant. The succeeding phrase, "on and above the highways and bridges of the county," does not, we think, exclude the existence of that power of the board of supervisors as to "public lands" precedently referred to in the statute.

Permits or licenses to cross the surface, leasehold estates of the 99-year lessees were properly and necessarily acquired from those lessees. But they owned only a tenancy for years, with such right, title, and use as went with that kind of an estate. Bernard v. Board of

Supervisors of Jackson County, 62 So. 2d 576 (Miss. 1953); Moss Point Lumber Company v. Board of Supervisors of Harrison County, 89 Miss. 448, 513, 42 So. 290, 296, 300 (1906). ██ Under Sec. 2780 Public Service had the right to construct the pipeline, but that right was subject to regulation by the board of supervisors as to the manner in which it should be constructed and maintained, including its location. Public Service should first have obtained an order of the board of supervisors dealing with the manner of construction, maintenance, and the location of the pipeline. But since no claim is here made against Public Service, its failure to do that is not now in issue.

██ Sec. 2780 places other restrictions and limitations upon the construction and maintenance of pipelines across sixteenth section and other public lands. The company owning the same "shall be responsible in damages for any injury caused by such construction or use thereof." In other words, if in the construction of the pipeline or in its use damages are caused either to the lessee's estate or to the owner's and landlord's estate of the State as trustee, the company is responsible to the lessee or State acting through its subdivision the county for such damages. But no issue of damages in the construction of the pipeline arises here. Public Service, which built it, became bankrupt in 1934. And it is stipulated that no trees have been cut. The clearing of the right-of-way was completed by Public Service. It is further stipulated that at this time appellee is not claiming any damages for the construction of the pipeline by Public Service. Hence the issue of damages for that item is not now involved.

The last quoted clause in the statute also provides "that the company owning the pipeline shall be responsible in damages for any . . . use thereof." Miss. Constitution 1890, Sec. 211, as it existed at the time of the construction of the pipeline, and as it is now under the 1942 amendment, states that the legislature

"shall provide that the sixteenth Section lands reserved for the support of township schools shall not be sold . . ." Constitution Sec. 95 prohibits the donation of lands belonging to or under the control of the state. ██ An uncompensated grant by the State of an easement or right-of-way across a sixteenth section would be in violation of these requirements, in Constitution Secs. 211 and 95. ██ And we cannot assume that the legislature intended by the enactment of Sec. 2780 to violate the constitution. On the contrary, the presumption is that that body intended to comply with the organic law, and the statute should be given a reasonable interpretation which is consistent with that presumed intent and which would permit the upholding of the act. ██ We think that the provision in Sec. 2780 that the pipeline company shall be responsible "in damages for any . . . use thereof" contemplates and means that the phrase "damages for any . . . use" includes compensation for the reasonable rental or use of a right-of-way. Compare 11 Words and Phrases (1953 Supp.), p. 11; Del Commune v. Bussen, 179 S. W. 2d 744, 748 (Mo. App. 1944); 43 Words and Phrases (1953 Supp.) p. 126. And this is the meaning of such provision irrespective of the grammatical intervention of the phrase "for any injury caused by . . ." The parties to the present suit stipulated the amount of an annual, reasonable rental for the lands. The final decree gave appellee a judgment against appellants for that stipulated rental, and that decree was in accord, we think, with the provision in Sec. 2780 that appellants shall be responsible in damages for the use of the right-of-way.

Appellants rely on such cases as Washington County v. Board of Levee Commissioners, 171 Miss. 80, 156 So. 872 (1934), and Covington County v. State Highway Commission, 188 Miss. 274, 194 So. 743 (1940), which upheld the right of the State itself to impose an additional public use upon sixteenth section lands without additional compensation. Compare Crary v. State High-

way Commission, 68 So. 2d 468 (1953). Although appellants are public service corporations within the meaning of that term so as to authorize the legislature to grant them the right of eminent domain over private lands, since they serve a substantial public convenience, Gandy v. Public Service Corporation, supra, they are not governmental subdivisions which come within the limited rule of the Washington and Covington County cases.

Somewhat similar to the instant case is Yazoo & M. V. R. R. Co. v. Sunflower Co., 125 Miss. 92, 87 So. 417 (1921). Sunflower County sued the railroad to cancel its claim to fee title of a strip of land across a sixteenth section upon which the railroad had its right-of-way, and to recover a reasonable rental for that strip. It was held that the grant of the right-of-way to the railroad by an 1882 statute did not go into effect until the actual location of the right-of-way, and that, since this did not occur until after the 1890 Constitution went into effect, Constitution Sec. 211 prohibited a grant to the railroad of a fee simple title to the strip. When the railroad constructed its line, it obtained from the county a lease for seven years. All it could acquire was the leasehold right for that limited time, and on the date of the suit, this leasehold right had expired. The Court said that the railroad having continued in possession after expiration of its lease, it was liable to the county for ''the reasonable value for the use of the right-of-way for the years subsequent to the expiration of the lease, and the chancellor's finding as to the value of the use of the right-of-way is supported by the evidence and his judgment will be affirmed.'' In affirming the decree allowing the county a reasonable rental for the sixteenth section right-of-way, the Court said in effect that this was necessary because of the provision of Constitution Secs. 211 and 95.

In Yazoo and M. V. R. R. Co. v. Bolivar County, 146 Miss. 30, 111 So. 581 (1927), the county sued in equity

to cancel the claim asserted by the railroad to its right-of-way over a sixteenth section, and for a writ of possession. In 1883, the board of supervisors had made an order granting appellant's predecessors a right-of-way over the school lands. The appellant in its answer pleaded that the effect of the board's order was to vest in it a 99-year leasehold estate, and that the county had the power to so lease the land involved. The Court agreed substantially with appellant's position, and reversed and rendered a decree for appellant. Although the board's order did not technically constitute a lease of the right-of-way to appellant for 99 years, the Court thought that it was at least a claim of right under which appellant had possessed the land adversely for more than forty years, and that the twenty-five year adverse possessory statute applied. Hence the Court dismissed the bill, and fixed the expiration of the railroad's leasehold for its right-of-way as 1982, 99 years after its institution. In other words, the Court, in the absence of a statute such as Sec. 2780, held that the board's order was in effect a grant of a 99-year leasehold for the railroad's right-of-way.

In summary, we hold that Sec. 2780 granted to Public Service and its successors, the appellants, a right-of-way only, being a revocable easement, over public lands, including the sixteenth section in question. However, this grant is subject to the restrictions stated in that statute, and among them is the requirement that the companies owning the pipeline, the appellants, are responsible in damages for any use of the right-of-way. That responsibility, in order to comply with Constitution Secs. 95 and 211 means that the pipeline companies must pay a consideration, either at one time or in installments of rent, for their right-of-way. In the present case the parties stipulated an annual rental up to the date of the suit. The final decree was based on that stipulation, and we affirm the decree adjudicating that appellants are indebted to appellee for such reasonable rental. In view

of our interpretation of the statute, however, the decree is in error to the extent that it enjoins appellants from operating and maintaining their pipeline, and that part of the final decree is vacated. Appellee is entitled to no injunction.

We confine our decision to that necessary to be decided. We consider only the application of Sec. 2780 and Miss. Constitution Secs. 95 and 211 to a pipeline right-of-way over sixteenth section lands. We do not consider any question with reference to the application of Sec. 2780 and these constitutional sections to public lands other than school lands.

Affirmed as modified.

*McGehee, C. J.,* and *Hall, Lee, Kyle, Holmes* and *Ethridge, JJ.,* concur. *Gillespie, J.,* took no part.

---

ROBERDS, P. J., dissenting in part.

I concur in the majority opinion except that I do not think the county has any right to collect rent, or compensation, for use of the easement. Section 2780 does not, by its terms, contemplate such payment in my opinion. It imposes upon public utilities the obligation to pay "damages for any injury caused by such construction or use thereof." Only "damages" can be collected and damage is not a word applicable to liability for rent. It has reference to destruction of, or injury to, fences, houses, improvements, etc., occasioned by construction of lines by public utilities. Indeed, if annual rent is to be paid, then the easement is converted into a tenancy from year to year.

Section 95, Mississippi Constitution of 1890, prohibiting donations of public lands by the legislature, does not require money payment consideration to comply with that section. Inducement to enterprises, serving the public, to locate within this State is sufficient considera-

tion. Hodges, City Tax Collector, v. Western Union Telegraph Company, 72 Miss. 910; City of Canton v. Canton Cotton Warehouse Company, 84 Miss. 268. Making available to the people of the State telephone, telegraph, electric power and natural gas service is a consideration more valuable than mere pittance for rent of the right-of-way, or easement. The legislature, the guardian of the public policy of the State, so considered in my opinion. At least that branch of the government thought the availability of these forces to the people, and the consequent tax revenues which such utilities have to pay the State and the various taxing subdivisions thereof, constituted sufficient consideration for grant of the power conferred by said Section 2780 and other like statutes.

An important practical question is involved here. Such a question, I realize, cannot change legal rights, but it is proper to weigh results in trying to determine the intent of the legislature and the effect of its enactments. That question is this: The result of this decision, in my view, will create chaos and utter confusion in this State. All of these utilities acted upon Section 2780 and like statutes in construction of railroads, telegraph, telephone and power lines and in the laying of gas and oil lines. None of the statutes expressly require payment of rent to the State for an easement over public lands. Indeed, Section 5525, Mississippi Code 1942, conferring power upon REA to construct electric power lines across public lands, expressly provides this may be done "without payment to the State for said easement." The other statutes, in effect, do the same thing by not expressly requiring money payment for such right. No utility paid such money rent. The records disclose that the State now owns approximately 710,000 acres of school and lieu lands and 950,000 acres of other public lands, a total of over one and a half million acres of public lands. When many of the utility lines were constructed the State owned considerably more than the stated amount of non-

school lands. These public service lines, both above and under ground, now traverse these public lands in thousands of instances. A number of the municipalities of the State, such as Natchez and Columbus, for illustration, are located upon sixteenth section lands. The utility lines are constructed on the streets and across parks throughout these municipalities. If appellant must pay annual rent in the case at bar, it is not seen why such rent cannot be collected from all of these utilities for easements over public lands back to 1890. Suits to do just that will be innumerable, unless the legislature has the power, and exercises it, to prevent such suits from being prosecuted.